Hone v. Fisher.

HONE *vs.* FISHER and others.

Under the provisions of the revised statutes, there is no implied covenant for the payment of a debt which is secured by mortgage upon real estate. On the contrary, the statute declares that where there is no express covenant for such payment contained in the mortgage, and no bond or other separate instrument to secure such payment has been given, the remedies of the mortgagee shall be confined to the lands mentioned in the mortgage.

No covenant can now be implied in any conveyance, of real estate, which has been executed since the revised statutes, whether such conveyance contains special covenants or not.

Where a mortgage is taken for the security of a pre-existing indebtedness, without any intention of discharging the original debtor from personal responsibility upon his former security, his liability upon that security will remain, notwithstanding the debt is further secured by such mortgage. But if the original indebtedness is intended to be discharged, and a mere mortgage is taken, to secure the amount of the debt, without any express covenant to pay the same, and no bond or separate instrument is given to secure such payment, the mortgagee has no remedy upon any

implied agreement of the mortgagor to pay the amount secured by the mortgage, but he must resort to the land alone; or to the proceeds thereof, for payment. The result is the same where an absolute deed is taken, as a mere security for the repayment of the amount of the consideration of such deed, instead of an ordinary mortgage; and where there is no covenant or other instrument rendering any one personally liable for the debt intended to be secured by such absolute deed.

THIS was an appeal from a decree of the vice chancellor of the sixth circuit. In February, 1837, Brown &. Hone, of the city of New-York, had a judgment against J. L. Fisher, of Tioga county, for about $3000, besides interest and costs, and had filed a creditor's bill thereon. A negotiation was thereupon commenced by G. Fisher, the father of the debtor, for the compromise of the claim. This negotiation was conducted through Strong & Taylor, the attorneys of Brown & Hone at Owego, and resulted in the accepting a proposition of G. Fisher, that the latter should pay all the costs of the proceedings and one-half of the debt and interest; one-third on the 1st of May, 1837, and the residue in two semi-annual payments from that date; and that he should have an assignment of the claim against his son, so as to give him the benefit of the judgmen' and of the creditor's suit which had been commenced to obtain satisfaction of the debt. The negotiation was protracted to such a length that the 1st of May arrived before G. Fisher had paid the costs, and completed the arrangement by giving his notes for the debt and interest. And being then confined at home by sickness, he sent his son-in-law, P. Whitmore, to Owego, to complete the arrangement with the attorneys of Brown & Hone. And to enable him to do so, G. Fisher signed two notes, in blank as to the amount, to be filled up each with one-third of the amount of the debt and interest, payable at six and twelve months. But as he had not the money to pay the other third of the debt and interest, he authorized Whitmore, who was then his copartner in business, to make the best arrangement he could as to that portion. The attorneys finally consented to accept the note of the firm of Fisher & Whitmore, payable in sixty days, for the third of the debt and interest which was to have been paid on the 1st of

Hone *v.* Fisher.

May; and the notes were filled up and delivered accordingly. And Strong & Taylor gave a receipt, at the foot of a statement of the judgment and of the amount thereof, specifying that they had received the three notes of G. Fisher, which notes, when paid, would be in full of such judgment.

The notes were sent to Brown & Hone, who ratified the final arrangement which had been made by their attorneys, but no part of either of the notes was paid as they respectively became due; the firm of Fisher & Whitmore, as well as G. Fisher individually, having become somewhat embarrassed as to their money matters. After the second note had become due, and had been protested for non-payment, Whitmore, in the name of his firm, wrote to Hepburn, his friend in New-York, to call upon Brown & Hone and endeavor to obtain an extension of time, to prevent suit being commenced upon the notes; and proposed, through him, that if the time of payment could be extended to September, 1838, the firm would give a house and lot, which was the individual property of Whitmore, as security; and would pay the debt as much sooner as possible. Several interviews took place between Hepburn and Brown & Hone on the subject, which were communicated to Whitmore; but no arrangement was made between the parties. In May, 1838, Whitmore went to New-York to see Brown & Hone, and an interview took place between him and them, or with Brown, one of the members of that firm, which resulted in an arrangement by which Whitmore and wife conveyed the house and lot to Brown & Hone, by an absolute deed, with warranty, subject to a previous mortgage thereon for about $500. The consideration expressed in this deed was the amount of the three notes and the interest thereon to September, 1838, including the expenses of protest, &c. And the grantees in the deed gave back to Whitmore a written agreement, reciting the execution of the deed and the amount of the consideration thereof, and whereby Brown & Hone promised and agreed with Whitmore that they would release and reconvey the house and lot to him, by a good and sufficient deed of conveyance, subject to the $500 mortgage thereon, if he or his assigns should well and truly pay

to them by the first of September, 1838, the sum of $1726,73, the amount of consideration expressed in the deed. Whitmore also assigned to them, for their own use, a policy of insurance upon the house, and took from them an assignment of their judgment against J. L. Fisher. The three notes were also delivered up to Whitmore; Brown having first made a memorandum upon each, signed by him with the name of his firm, stating that it was settled. An account current was also made out in favor of Brown & Hone, against the firm of Fisher & Whitmore, in which account the latter firm was charged with the amount of the three notes, the interest thereon to September, 1838, and the expenses of protest, &c.; amounting to the same sum mentioned in the deed as the consideration. And at the foot of this account, which was also delivered to Whitmore, there was a receipt as follows: "Rec'd in settlement. Brown & Hone." After this arrangement had been completed, and before the first of September, 1838, Brown & Hone, having become embarrassed, made a general and absolute assignment of all their merchandise, debts, and claims of every description, and all their property real and personal, to the complainant for his own benefit; he having assumed the payment of the debts of the firm. Whitmore did not deliver up the possession of the house and lot to Brown & Hone, at the time of the execution of the deed, nor to the complainant, as their assignee, on or after September, 1838; but continued to reside in the house and to occupy the lot at the time the testimony was taken in this cause. He had, however, offered to one of the members of the firm of Brown & Hone, about the last of the year 1838, to deliver the possession to him when he should be requested to do so.

In August, 1839, the complainant filed his bill in this cause, against Whitmore and his wife and G. Fisher, stating among other things, that the house and lot were conveyed to Brown & Hone, to secure the payment of the amount due upon the three notes; that it was understood by the parties that the conveyance was to be a collateral security for the debt, and that the agreement to reconvey was given in pursuance of such understanding; and that the defendant Whitmore had continued

Hone *v.* Fisher.

to possess the premises, and to enjoy the rents, issues and profits thereof.   And the complainant prayed for a foreclosure and sale of the premises, for the payment of the debt and costs, and that the defendants G. Fisher and P. Whitmore might be decreed to pay the deficiency ; or that he might have such other relief as might be equitable and proper.   The defendants, by their answer upon oath—P. Whitmore positively, and his wife and her father upon information and belief—averred that the house and lot were conveyed to Brown & Hone under an agreement that such conveyance should be in full satisfaction and discharge of the notes; but that Whitmore should have a writing entitling him to a reconveyance if he repaid the amount of the consideration money on or before the first of September, 1838. And that he was to surrender the premises to them on that day, if he did not pay the amount of the consideration money expressed in the deed, so as to entitle him to a reconveyance. The cause was heard upon pleadings and proofs, before the vice chancellor ; who decided that the conveyance was a mortgage, and that the defendants G. Fisher and Whitmore were both liable for the deficiency, if any, upon a sale of the premises. He therefore made the usual decree for a foreclosure and sale, and a decree over against them jointly for the deficiency.   From that decree the defendants appealed to the chancellor.

*J. J. Taylor,* for the appellants.   Whitmore had no interest in, and was no way connected with, the settlement of the claim of Brown & Hone against G. L. Fisher.   Whatever he did in the matter, which was very little, was simply as the agent of his partner and father in law, George Fisher, who was then sick.   This appears from the answer, and from the testimony of G. L. Fisher and Taylor, and the correspondence between Brown & Hone and Strong & Taylor, and between George Fisher and Strong & Taylor.   The indebtedness which grew out of that settlement was therefore really the indebtedness of George Fisher alone.   And Whitmore was not even surety, except as to one-third of the amount.

The conveyance by Whitmore and wife to Brown & Hone.

Hone v. Fisher.

and the covenant from them to Whitmore, did not constitute a mortgage, but they were an absolute deed and a covenant to reconvey on certain conditions. The deed is absolute on its face, and is a warranty deed, and was always treated as an absolute deed by all parties, being recorded and held as such, and is expressly subject to a mortgage and certain reservations. The notes were, at the time of the conveyance, endorsed "Settled—Brown & Hone;" and were delivered up, and nothing was taken in their place. The amount due thereon was acknowledged to have been "received in the settlement." The policy of insurance upon the buildings was assigned absolutely to the grantees, and the judgment against G. L. Fisher, out of which the indebtedness grew, was assigned absolutely to Whitmore. The agreement to reconvey is not in the form and language of a defeasance, but of a contract to convey upon payment of a sum of money. There is no remedy given in it, or elsewhere, for the payment of any surplus or any deficiency upon a sale of the premises. And after the conveyance there was no indebtedness remaining from Fisher & Whitmore, or either of them, to Brown & Hone. Whitmore, who gave the deed, never had been indebted to Brown & Hone; at least no further than as surety for George Fisher, and that only to one-third of the whole amount of the consideration for the conveyance. Consequently there never had been a pre-existing debt of the grantor. And all the indebtedness, as well of George Fisher as of Fisher & Whitmore, was extinguished at the time of the conveyance. This appears not only from the papers made exhibits in this cause, and to which I have before referred, but also from the bill and answer and the proofs. Brown, it is true, speaks indefinitely of assurances that the money should be paid on or before the first of September. But even if any such assurances were given, they may as well be understood as relating to Whitmore's first proposition—to give a mortgage—which was rejected, as to his second offer to give an absolute deed; which offer was accepted. Such assurances cannot be relied upon as promises to pay, which are binding; for no such promises are stated in the complainant's bill. They do not amount to an

agreement, as Brown states them ; and besides, being promises to pay the debt of a third person, they would be void by the statute of frauds.

The price given was not disproportioned to the actual value of the land. It was worth a little less, rather than more, than was given. It is where it is worth much more, that a presumption that a mortgage was intended is raised. No good reason has been assigned, nor can be, why this form of transacting the business was adopted, if the intention of the parties was to make it a mortgage. It appears from the answer, which is responsive to the bill, and from the proofs, that a mortgage was not intended. Even Brown's testimony, viewed in all its parts, leads to that conclusion.

But even if we concede that the conveyance, taken in connection with the agreement to reconvey and all the attendant circumstances, is a mortgage, it certainly cannot be contended that there is an express covenant for the payment of any money contained in the mortgage, including the agreement to reconvey, or that any bond or other separate instrument to secure such payment has been given. By the statute, therefore, the remedies of the mortgagee are to be confined to the lands mentioned in the mortgage. And this must apply as well to costs as to debt. Such instruments as had before existed to secure the payment, were given up and cancelled at the time of the conveyance. There was no fraud in the arrangement made by Whitmore with Brown & Hone, in May and June, 1838. The answer expressly denies fraud, and the proofs confirm the denial. And the most that Brown pretends is, that he gathered from Whitmore's conversation that the property conveyed to Brown & Hone was worth much more than it was. And he admits that every opportunity was given them to learn its value ; that various references were given them ; and that it was not upon Whitmore's statement that they purchased, but upon information derived from other sources. He even says, the whole matter was concluded upon before they saw Whitmore. The matter was in contemplation some weeks, or rather months, before it was finally consummated ; and there is no pretence that

any measures were adopted to prevent or in any manner influence Brown & Hone from making every examination and inquiry in reference to the property and its value. There could have been no fraud in the sale of the property by Whitmore to Brown & Hone; for all that is pretended is an erroneous estimate of its value. And even the value turns out by the testimony of witnesses to have been but little if any below the price paid. Be it ever so erroneous, the mere expression of an opinion as to the value of property, whether real or personal, where there is no concealment or misrepresentation of facts, can never render the sale fraudulent. In this case every material fact was freely and voluntarily disclosed.

The complainant's bill should therefore be dismissed with costs. Even if the conveyance should be deemed a mortgage, the complainant's remedies are confined to the lands mortgaged; and having claimed a decree for the deficiency on the sale, and having been offered, before suit brought, all he can have, he must, for either of these reasons, pay costs to the defendants.

*J. M. Parker*, for the respondent. The conveyance from Whitmore and wife to Brown & Hone, was a mortgage; as appears clearly from the whole case. The answer denies this, so that we must make it out by more than the testimony of a single witness. This we contend we have done. Brown fully contradicts the answer, and sustains the bill on this point. Besides, the answer being contradicted by the other testimony, in some other particulars, as will presently appear, is entitled to diminished weight—at least, we may set off Brown against the answer. And let us then see what is the testimony bearing upon this point, aside from those two. We have the evidence arising from the papers themselves, to wit, the deed and the contract to re-convey. These together constitute a mortgage, and would be so held without any more evidence than the bare production of them. (*Parson's Com.* 178. *Kelleran* v. *Brown*, 4 *Mass. Rep.* 449. *Erskine* v. *Townsend*, 2 *Id.* 493. *Clark* v. *Henry*, 2 *Cowen's Rep.* 324. *Roach* v. *Cozine*, 9 *Wend. Rep.* 227.) Suppose Whitmore had filed his bill to redeem, pro-

ducing these papers alone, can there be a doubt that he would be allowed to redeem? Or suppose a judgment creditor should claim to redeem under those papers, would he not be permitted? But beyond these papers, (which according to the case of *Kelleran* v. *Brown*, imply a debt, and that the conveyance was in security,) we have the fact proved and undisputed, that here was an indebtedness, of the precise amount of the consideration in the deed; which greatly strengthens the view now taken. We have the evidence of the fact that Whitmore has, ever since the conveyance, continued in possession of the premises. This is inconsistent with the idea of a sale, but is perfectly consistent with that of a mortgage. The fact of his payment of the interest on the $500 mortgage, to the loan commissioners, as stated in his letter, shows that it was a mortgage. This payment of interest must have been on the 1st Tuesday of October. If he had sold the premises subject to the mortgage, why did he pay this interest? It is entirely inconsistent with the idea of a sale, but perfectly consistent with that of a mortgage. His requiring of Brown & Hone an assignment of the judgment against G. L. Fisher, shows that he considered the debt secured by the notes unpaid, and consequently that the conveyance was a mortgage.

The receipt given to Fisher & Whitmore, by Taylor, made the payment of the notes payment of the judgment, and so was the arrangement between Brown & Hone and G. L. Fisher, as appears by the answer. This receipt Whitmore had: it was given to him: he knew the effect of payment of the notes. Why, then, did he require an assignment of this judgment, if he considered the notes paid? This requirement is inconsistent with the idea that they were paid by the conveyance. Brown & Hone, who knew nothing of this receipt, and who considered the judgment paid by the notes, as Brown says, might well be willing to transfer it to Whitmore as mere matter of form. But the evidence shows that Whitmore intended to use it. The assignment was not thought of till after he got home, nor till L. T. Leach died; when it might be turned to good account. Whitmore's letter shows that the property was offered in secu-

rity for payment of the debt on the 1st of September; and there is nothing, out of the answer, showing that the arrangement was different. Hone's testimony shows that he considered the conveyance merely as security for the payment of the debt on the 1st of September; and his whole conduct shows that he never dreamed that the arrangement was different. The assignment to the complainant shows that Brown & Hone so considered it then. There existed no reason at that time for them to have desired to call it a mortgage rather than a deed.

But it will be said that the debt was discharged, because the notes were given up and endorsed "settled." Also that an account current was made out and receipted. This, we contend, does not at all show that the debt was discharged, or that the new security was taken in payment. In *Clark* v. *Henry*, the notes were also given up, but that circumstance is made no account of by the court. (*See also Olcott* v. *Rathbone*, 5 *Wend. Rep*. 490; *Palmer* v. *Gurnsey*, 7 *Idem*, 248; *and Ainslie* v. *Wilson*, 7 *Cowen's Rep*. 662.) The giving up of a security does not discharge the debt. Nothing short of a payment will do this. The notes were but securities for the debt which the defendants had assumed. They are so spoken of in the answer. And the giving up of one security upon taking another, does not discharge the debt. The endorsement on the notes, rather confirms this view, than otherwise. Settled does not mean paid. We are constantly in the habit of speaking of an account as settled when a balance has been struck, or a note given for the amount. The defendants themselves speak of the giving the notes in settlement of the judgment against G. L. Fisher.

The defendants Fisher & Whitmore are liable to make up the deficiency of the debt which the proceeds of the sale leave unpaid. This follows from the fact that the property was taken in security. (*Ainslie* v. *Wilson*, 7 *Cowen's Rep*. 662. *Palmer* v. *Gurnsey*, 7 *Wend. Rep*. 248.) The debt remains unless it is paid; and of course the liability to pay continues. (*Olcott* v. *Rathbone*, 5 *Wend. Rep*. 490.) Even if the agreement

Hone *v.* Fisher.

had been to release the personal claim, and to take only the land as security, still, as Brown & Hone were induced to take it, under representations of Whitmore & Hepburn, that it was ample security, when Whitmore knew it was not, the defendants will now be held to make it good security. (3 *Cowen's Rep.* 537, 576.) Whitmore defrauded Brown & Hone in relation to the value of the property, and thereby induced them to take it. And therefore, even if the sale were absolute, the court will set it aside, and decree the payment of the debt by Fisher & Whitmore. And the court should now place the parties *in statu quo.* ( *Whelan* v. *Whelan,* 3. *Cowen's Rep.* 537, 576.) This should be done notwithstanding Brown & Hone have assigned to the complainant; who stands in their place, and has, in this matter, all their rights.

THE CHANCELLOR. The decree in this case is erroneous; even if the vice chancellor is right in supposing that neither party intended to discharge the original indebtedness upon the notes, and that the deed and defeasance were a mere collateral security for the payment of that original indebtedness. For the decree charges the defendant Whitmore, as well as G. Fisher, with the balance which may remain due upon all three of the notes, if the proceeds of the sale of the premises shall not be sufficient to pay them in full; although Whitmore was not indebted to Brown & Hone for any part of two of those notes, and merely signed the name of his firm to the third note as security for his father-in-law. And certainly he cannot be charged as on an implied covenant, to pay the debt of another, by the execution of the deed. For, under the provisions of the revised statutes there is no implied covenant for the payment of the debt intended to be secured thereby. But on the contrary, the statute declares, that where there is no express covenant for such payment, contained in the mortgage, and no bond or other separate instrument to secure such payment has been given, the remedies of the mortgagee shall be confined to the lands mentioned in the mortgage. (1 *R. S.* 738, § 139.) And no covenant can now be implied in any conveyance of real estate,

whether such conveyance contains special covenants or no. (*Idem*, § 140.) Where a mortgage, therefore, is taken for the security of a pre-existing indebtedness, without any intention of discharging the original debtor from personal responsibility upon his former security, his liability upon that security will remain, notwithstanding the debt is further secured by such mortgage. But if the original indebtedness is intended to be discharged, and a mere mortgage is taken to secure the amount, without any express covenant to pay the same, and no bond or separate instrument is given to secure such payment, the mortgagee has no remedy upon any implied agreement of the mortgagor to pay the amount secured by the mortgage ; but must resort to the land alone, or the proceeds thereof, for payment. The result will be the same where an absolute deed is taken as a mere security for the repayment of the consideration of such deed, instead of an ordinary mortgage ; and where there is no covenant, or other instrument, rendering any one personally liable for the debt intended to be secured.

In the present case there is no covenant, in the deed executed by Whitmore, binding him to refund the consideration money, mentioned in that deed, in any event ; or to pay the notes which were given up and cancelled by the grantees in the deed at the time it was given. Nor did he or his father-in-law execute any bond, or other separate instrument, binding them or either of them to such payment. And, as Whitmore was not personally liable for the payment of two of these notes, he would not have been liable for the deficiency, so far as those two were concerned, if the notes themselves had not been cancelled, and he had signed a written agreement that the notes should remain as a collateral security for the payment of the amount of the consideration money expressed in the deed, in case the proceeds of the land itself should not be sufficient to pay the amount.

From a careful examination of the documentary evidence in this case, in connection with the positive answer of the defendant Whitmore, responsive to the bill, and after giving all due weight to the testimony in behalf of the complainant, I cannot

Hone *v.* Fisher.

resist the conclusion that the deed of May, 1838, was intended to be received as a substitute for, and in full discharge of, the individual liability of G. Fisher upon two of the notes, and of the liability of him and his copartner jointly upon the other note. The cancelling of the notes by Brown & Hone, and giving them up to Whitmore, and the making out of a formal statement or account against Fisher & Whitmore, in which that firm was charged with the three notes, together with the interest and costs of protest, amounting to the exact consideration expressed in the deed, and their formally receipting that account and delivering it to Whitmore, appear to be acts which are wholly inconsistent with the idea that Brown & Hone expected or intended to reserve to themselves the right to sue G. Fisher, or the firm of Fisher & Whitmore, on either of those notes, in case the amount mentioned in the deed and agreement of May, 1838, was not paid by the first of September thereafter; or if the proceeds of the house and lot, upon a sale thereof, should not be sufficient to pay the same.

From the testimony in the case, I have very little doubt that Brown had received such information as to the value of the property, either from Whitmore and Hepburn, or from those to whom he had been referred, in the county where it was situated, as to induce him to suppose it to be worth much more than the amount then due upon the notes; and that the house and lot would unquestionably be redeemed within the time specified in the written agreement given by himself and his partner to Whitmore. He also probably supposed that if the money was not paid by the day, he and his partner would be the absolute owners of the property, so that they could sell it and pay themselves. In this view of the case, he may have considered the deed a mere security for the amount which was due upon the notes before they were given up and cancelled. And it may not have been considered necessary by him to examine the question whether the grantees in the deed would have a personal claim against any one for the deficiency, if the premises should not be redeemed, and could not be sold for enough to pay the amount intended to be secured by this conveyance.

Hone *v*. Fisher.

As I have arrived at the conclusion that neither of the appellants is liable for the deficiency, or any part of it, it is perhaps a matter of very little consequence to them whether the deed is to be considered an absolute conveyance, with an agreement to re-sell to Whitmore upon certain conditions, or as a security for the payment of money merely, so as to require a foreclosure to give to the complainant a perfect title to the land. If the value of the house and lot had been so much greater than the amount of the three notes as Brown & Hone supposed it to be, at the time they took the deed, as a substitute for the prior indebtedness, I should think the transaction was intended as a mere security; and that Whitmore would have the same equity of redemption as if he had given a mortgage in the ordinary form to secure the same amount, without personal liability to pay the debt if the mortgaged premises should prove to be insufficient for that purpose. And the conclusion that in equity the grantor had a redeemable interest in the premises, is strengthened by the fact that there was a verbal agreement that he should retain possession of the house and lot until the time fixed for the payment of the money arrived, and without paying rent in the meantime. In this respect, as well as in some others, this case is like that of *Roach* v. *Cozine*, (9 *Wend. Rep.* 228,) where the supreme court held that the grantor had an equity of redemption, notwithstanding his conveyance was absolute on its face. The defendant Whitmore also states, in his answer, that he applied for an extension of credit on giving security upon the property; but that Brown declined to take it except in the form of an absolute deed. I am therefore of opinion that if the premises had been as valuable in fact as they were represented to be, and Whitmore had applied to redeem after the first of September, 1838, and the complainant had insisted upon holding the property, this court would have held that the transaction was in fact a security for the consideration money mentioned in the deed, and the defeasance or agreement to reconvey.

The proper course therefore is to reverse the decree of the vice chancellor, and to declare that the deed was a security in

the nature of a mortgage, but without personal responsibility on the part of either of the defendants for the payment of the amount intended to be secured thereby; and directing a strict foreclosure, unless Whitmore and wife redeem, by paying the $1726,73, and interest from the first of September, 1838, within thirty days after the entry of the decree upon this appeal. Or, if the complainant prefers it, he may have a decree declaring that the deed was an absolute conveyance, as the defendants have insisted in their answer; and not a mortgage. And in the latter case, the complainant will be entitled to the rents and profits of the premises, while the defendant Whitmore has occupied them as a tenant at will, at least for six years. If the complainant elects to have such a decree entered, the bill will be dismissed, upon that ground; and without prejudice to his right to bring an action at law for the recovery of the rents and profits of the premises.

In either case, I shall not give the appellants costs, either upon this appeal or in the suit before the vice chancellor. For I am satisfied, from the testimony, that Brown & Hone were very greatly deceived in relation to the real value of the property; and that they were induced, by the representations of Whitmore, to believe that he would redeem the property, and thus enable them to obtain the amount justly their due, when he in fact knew that the premises, subject as they were to the state mortgage, were not worth in cash any thing like the amount of their debt.