[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 19 
Where an order or decree of a Surrogate, admitting a will to probate, is reversed by the Supreme Court upon a question of fact, and an issue is awarded to be tried at the Circuit, no appeal will lie to this court, for the reason that the order of the Supreme Court is not final. The matter is still pending in that court, and may be again brought before the general term, upon exceptions taken at the trial, or after motion to set aside the verdict. But it is otherwise where the *Page 20 
Supreme Court reverses the order for error in law, and remits the proceedings back to the Surrogate. The order of reversal in such a case is a final determination of the proceeding in the Supreme Court. Nothing remains to be done in that court; and if a new appeal is brought from a second decree of the Surrogate, it is a proceeding de novo, and not a continuance of the first appeal. Hence, after the Supreme Court had corrected its error in this case, in ordering an issue to be tried at the Circuit, instead of remitting the proceedings to the Surrogate, the order made became appealable to this court. (Messerve v. Sutton, 3 Comst., 546.)
Upon the hearing before the Surrogate, the parties contesting the will offered Mary Talbot, the widow of the testator, as a witness to impeach the will, on the ground of fraud and undue influence and of want of testamentary capacity. The witness was objected to and excluded, and the contestants excepted to the decision. If the Surrogate was right in excluding this witness, we should be compelled to look into the evidence to see whether he was also right in his conclusion upon the question of capacity and undue influence; but if, as the Supreme Court has held, he was wrong in such exclusion, then his decree was properly reversed, and it becomes unnecessary to examine the case at large.
Was Mary Talbot, then, a competent witness? The objection to her competency is placed upon the grounds, 1. That she was a party to the suit or proceeding, and therefore incompetent; and, 2. That she was interested in the result of the decision to be made.
The Supreme Court was, perhaps, right in assuming that those sections of the Code which relate to the examination of parties and interested persons as witnesses, do not apply to proceedings in Surrogates' courts. It has been so held by that court in several cases in which the question has arisen, and, as it will not affect the result, I shall, for the purposes of the present case, adopt that conclusion. It is doubtful whether the widow could be considered as a party to the proceeding before the Surrogate, in such a sense as to require her exclusion, *Page 21 
even under the strict legal rule which prohibits parties from being examined as witnesses. It is true, she was included in the citation; but she was not among those who contested the probate of the will, nor did she appear at all at the hearing.
But, conceding that she was to be regarded as a party within the rule, her examination should, nevertheless, have been permitted, unless she had some interest in the question to be determined. Although section 397 of the Code has no application to the rule, still that section is merely in affirmance of the equitable rule which previously obtained in the Court of Chancery; and there is no reason why that rule should not be applied to proceedings in Surrogates' courts, which partake more nearly of the nature of equitable than of legal actions. It was unnecessary to observe the forms prescribed by the Court of Chancery in such cases. Those forms were adopted for the sake of convenience merely, and were in no respect essential to the application of the rule.
The admissibility of Mrs. Talbot as a witness, therefore, depended entirely upon the question of interest. If interested, she was incompetent upon that ground alone, as section 398 of the Code did not apply, and the act of 1857 had not then been passed. She was, no doubt, interested to defeat the will sought to be proved, unless the Supreme Court was right in assuming that the effect of the subversion of that will would be to revive and establish a previous will, under which her rights and interests would be identical with those under the will in controversy.
It is said, on the part of the appellant, that there was no proof that the first will, spoken of by the witness Conery, had been duly executed. It is true, the proof in regard to its execution is not very explicit. The testimony on that subject, however, was drawn out by the appellant himself. Conery, the witness, was the person who drew both the wills. It is evident, from his testimony, that he perfectly understood the requirements of the statute. He swears that the first will was executed by the testator, and that he, together with another *Page 22 
person, signed it as witnesses. He also says that the appellant himself called upon him, the witness, to draw the second will, saying, at the same time, that his father was going to make a new will, and adds that the appellant had previously told him that the testator talked of getting the witness to draw another will. The cross-examination of the witness, Conery, on this subject appears to assume that the testator had made a previous will, and that his object in getting Conery to draw the will in question was to change the disposition of his property made in the prior will. This is, I think, sufficient to establish, prima facie,
that the first will had been properly executed.
But it is suggested that, although the first will was duly executed according to the forms prescribed by the statute, it does not follow that it was a valid will. It might still, upon being propounded for probate, be rejected, upon the ground of the incapacity of the testator, or as having been obtained by fraud or undue influence. Hence, it is insisted, by some of my associates, that, until the first will was proved and established as a valid will, it could not be assumed that its effect would be to neutralize the interest of the widow. This position, however, cannot, in my view, be sustained. A will, in all respects duly executed according to law, is, prima facie, a valid will, and must be so regarded until the contrary is shown. The burden of proof, in all such cases, lies upon the party denying its validity. The question might be very clearly presented in this form. Suppose, upon the trial of an issue in a suit at law, a witness is offered who appears, prima facie, to have an interest in the event of the action, and, to remove the objection, it is proposed to show a will, in all respects properly executed: would it be a sufficient objection to the evidence that the will had not been proved, and that it might turn out to be invalid? I think not. Objections upon the ground of interest have been frequently met at the Circuit by the introduction of bonds, notes, and other instruments, which have never been judicially established; and I am not aware that an objection for that reason has ever been sustained. It is as true of such instruments as of wills, that they may be void for *Page 23 
incompetency, for fraud, and other causes; but such invalidity is not to be presumed. The law assumes the contrary, until the invalidity is shown. There is no reason why wills should be made an exception to this rule; and I have met with no authority to that effect.
It follows, that the Supreme Court was right in holding that the widow had no interest in the matter concerning which she was offered as a witness, and, hence, that she was improperly excluded by the Surrogate. The order appealed from must, therefore, be affirmed.
DAVIES, LOTT, JAMES and HOYT, Js., concurred.