### DETERMINED IN THE

# COURT OF APPEALS

### OF THE

# STATE OF NEW YORK,

#### At the September Term, A. D. 1868.

---

GEORGE L. MARVIN, Respondent, *v.* LE GRAND MARVIN, as Executor of the Last Will and Testament of Sarah L. Marvin, deceased, Appellant.

WILLS. PRACTICE. APPEAL. CODE OF PROCEDURE. MOTION FOR NEW TRIAL. JUDGMENT UPON THE VERDICT OF JURY IN THE MATTER OF A CONTESTED WILL. BURDEN OF PROOF. FINDINGS BY JURY. VERDICT OF JURY CONTROLLING UPON THE COURT.

The questions decided in this case may be stated as follows:

1. An appeal does not lie from a decision of the Supreme Court reversing the decree of a surrogate admitting a will to probate, and awarding an issue to try the questions of fact arising in the case, before a jury.

*a.* Such was the practice prior to the adoption of the Code, when the appeal from the surrogate's decision was to the circuit judge, who, if he deemed the decision of the surrogate erroneous, might, by an order, reverse such decision, and if such reversal was founded upon questions of *fact* he was to direct a feigned issue to be made up, to try the questions in controversy. This order was not subject to review in any tribunal.

*b.* Under the Code of Procedure, the appeal from the decision of the surrogate is to the Supreme Court; but there is no change in the rule that the order of reversal in such case, when founded upon questions of fact,

is not subject to appeal; for, first, such determination and sending of the case to trial on the issue, is not a final determination of the questions involved; and, second, the authority to review, on appeal from the ultimate and final judgment, any intermediate order involving the merits and necessarily affecting the judgment, does not include the order in question, as this determines nothing, except that the questions of fact shall be tried by a jury.

2. Where the Supreme Court has reversed the decree of a surrogate and awarded issues for trial, which trial is had accordingly, it would *seem* that a motion for a new trial is not properly brought at Special Term. As it was the court in General Term that ordered the issue, the question whether a new trial of that issue shall be granted, properly belongs to the General Term, and not to a single judge at Special Term. WOODRUFF, J.

3. Where the application for a new trial in such case is properly brought, in so far as it is based upon considerations addressed to the discretion of the court or its favor, as for surprise, newly discovered evidence, or that testimony upon the trial could be proved to be untrue, — and not upon alleged errors of law, the decision of the court therein cannot be reviewed here.

4. Where the jury, upon the trial of an issue, ordered by the Supreme Court in the matter of a contested will, find that the will was executed under restraint, the only judgment which the court can render upon such verdict, is one declaring said will to be invalid, and requiring the surrogate to annul the record and probate thereof, if any have been made, with costs to the contestant, etc.; and such judgment can not be set aside here, where no violation of any rule of law or equity upon the trial is alleged, unless the verdict upon which it was founded is so clearly against evidence, or without evidence, that it would have been the duty of the court below, as a matter of law, to instruct the jury to find otherwise.

5. It is not sufficient to justify a reversal of a judgment by this court, that the court, sitting as jurors, with the same evidence before them, would have reached a different conclusion, or rendered a different verdict.

Incidental points discussed in the opinion and approved, are:

1. That where the competency of the testator to make a will is established, the burden of showing that the will was obtained by undue influence is upon the party making the allegation.

2. The finding that the testator had capacity to make a will is not inconsistent with the finding that the same was made under restraint or undue influence. The want of the former invalidates the execution of the will, with no further disabilities superadded. The latter assumes the testamentary capacity to exist, but that it is not freely exercised; two essentially distinct grounds for impeaching the validity of an instrument.

3. The claim of the appellant (executor, and supporter of the will), that the verdict of the jury in such case is not controlling, and that,

like an ordinary feigned issue out of chancery, its office and purpose is to assist the conscience of the court, which may, nevertheless, on the coming in of the verdict, look into the evidence, and if not satisfied with the finding, order a new trial, or may disregard the verdict and proceed to determination of the case according to the judgment of the court itself upon all the proofs, — is not well taken, and the statute forbids this court to so regard the verdict.

Besides these questions determined by the court, there are lessons to be derived from the case and its management, of practical value to any person who may have occasion to make a will, or who may be employed as attorney or counsel to aid or advise in drawing, contesting or sustaining one. Among these are the following :

1. The proverbial "*nine points*" are not more advantageous to the defense upon a question of title, than is a single point, well taken, to the contestant of a will. Indeed, the latter has rather the advantage in position, over the former, for, with the "*nine points*" in his favor, the party in possession may be ousted; but with a single point, if vital and maintained, the contestant must prevail, no matter how many points are established adversely to him.

2. The effect of a too favorable charge, in sometimes opening the door to exceptions and to the doubts and uncertainties of a new trial, has doubtless been frequently noted. Something analogous to this, in its teachings, may be found in this case, which may serve to admonish testators and legatees, that the surest way to defeat a purpose or desire to disinherit one or more of several heirs, having in law and in common justice and common usage, near and equal claims to participate in the inheritance, is to decree total and absolute disinherison by the provisions of a will. It matters little what may be the justification for such a course in the testator's own mind, it must be such as can be made palpable to the sense and sense of justice of disinterested minds, or a *jury* will be almost certain to find, in the extraordinary fact of total disinherison itself, the evidence of defective capacity or of undue influence.

3. The contestant of a will should be strong in *facts* for the *jury*. The executor, legatee, and, generally, the supporter, of a will needs to fortify himself with *points of law* for the court; neither, of course, losing sight of any incidental advantages which the facts or the law may present in his favor.

4. The futility of going to the Court of Appeals, as to a jury, upon a question of fact alone, is exemplified in this case.

APPEALS from judgment of the Supreme Court in General Term of the eighth district, adjudging the instrument propounded by the appellant as a will of Sarah L. Marvin, deceased, invalid and of no effect, and requiring the surrogate of Erie county to annul the record and probate thereof; also, from an order affirming the denial of the appellant's motion for a

new trial of the issue awarded to try the questions of fact touching the due and valid execution of the alleged will; also, from the previous order of the Supreme Court reversing the decree of the surrogate, admitting the said instrument to probate as a will of the real and personal estate of the said alleged testator, and awarding the said issue to try the questions of fact upon which the Supreme Court differed from the surrogate.

In January, 1864, the appellant produced, and offered for probate, before the surrogate of Erie county, an instrument purporting to be the last will and testament of Sarah L. Marvin. The respondent, one of her children, appeared and contested such probate, upon various grounds, and, among others, that the decedent lacked testamentary capacity, and that the instrument was procured by fraud and undue influence, and does not express the intentions of the decedent. Proofs were thereupon taken, and, on the 8th of March, 1864, the surrogate decreed, that the instrument was duly executed, and is genuine and valid; that the testatrix was, in all respects, competent to devise, and not under any restraint; and that the said instrument, and the proofs, etc., be recorded, and the instrument be admitted to probate, and established as a will of real and personal estate, and that letters testamentary issue to the said Le Grand Marvin, the executor therein named.

From this decree, the contestant, George L. Marvin, appealed to the Supreme Court, in which, at a General Term, on the 7th of September, 1865, the decree of the surrogate was reversed on questions of fact, and it was ordered, that an issue be made up to try the questions of fact arising upon the application for probate to be tried at the Circuit.

Issues were accordingly settled and tried in October, 1866. The jury, on that trial, found, the subscription of the instrument by the decedent at the end thereof, in the presence of the subscribing witnesses, her declaration at the time, that it was her last will and testament, the signing by the witnesses at the request of the decedent, and that she was at that time competent to make a will of real and personal estate, but that she was under restraint at the time of the execution of the said will.

The proponent (the alleged executor) made a motion, at Special Term of the Supreme Court, for a new trial, upon the alleged grounds of surprise, false testimony at the trial, newly discovered evidence, errors of the judge at the Circuit, verdict against evidence, and that the case was not fully considered nor fairly tried; which motion was denied on the 5th of June, 1867, and the proponent appealed to the General Term.

At the November General Term, the appeal from this order of the Special Term was argued, and thereafter, at the February General Term, was affirmed, and, at the same term, the cause was brought to a hearing upon the verdict thus rendered, and it was thereupon adjudged, that the said instrument was executed by the said Sarah L. Marvin, under restraint, and that the same was and is invalid and of no effect; and the surrogate of Erie county was, by the judgment, required to annul the record and probate thereof, if any have been made, with costs to the contestant, etc.; and direction was also given, that the decision be certified to the surrogate as the final determination of the court.

The proponent, Le Grand Marvin, appealed to the Court of Appeals, and, by the notice of appeal, states that he appeals from this final judgment, and also from the order affirming the denial of the motion for a new trial, and also from the order reversing the decree of the surrogate admitting the will to probate; which order awarded an issue.

*Le Grand Marvin*, appellant, in person.

*Sherman S. Rogers*, for the respondent.

WOODRUFF, J. The argument of this appeal has taken a very wide range, and has, I think, proceeded to some extent upon a misapprehension on the part of the appellant. His notice of appeal, as well as his argument here, seeks to bring under review the decision of the Supreme Court, by which the decree of the surrogate was reversed and an issue was awarded, and the opinions delivered when that order was made have been the subject of extended review. It is clear, that we have no jurisdiction to review that decision, and, therefore, were it to our minds clear, that, upon the evidence presented to the surrogate, we should have concurred with

him in his conclusions of fact, we could not reverse a decision of the Supreme Court based upon a different estimate of the credibility, force and effect of the evidence.

Had that reversal been based upon a question of law, and been final in its effect upon the question of probate, it would have been the subject of review by this court. But it determined nothing finally respecting the application to the surrogate for probate, or the questions of law or fact involved therein. It simply determined, that, upon the evidence, the Supreme Court had reached a different conclusion of fact from the surrogate, and, upon this difference, the statute peremptorily requires that the questions of fact arising upon the application for probate shall be submitted to a jury. There is no discretion, and the order is not subject to review. Prior to 1847, the appeal from the surrogate in such a case was to the circuit judge, and the legislature deemed it wise to direct, in effect, that, if the circuit judge upon the evidence differed from the surrogate on the questions of fact, those questions of fact should be tried by a jury. (2 R. S. 66, § 57.) The act of 1847 (see Laws of 1847, ch. 280, § 17), by which the jurisdiction to hear such an appeal was transferred from circuit judges to the Supreme Court, did not change the character of the order to be there made, or its effect.

By the provisions of the statute, "If it appear to the circuit judge, that the decision of the surrogate was erroneous, he may, by order, reverse such decision ; and if such reversal be founded upon a question of fact, shall direct a feigned issue to be made up to try the questions arising upon the application to prove such will." This order is the necessary result of a difference of opinion between the circuit judge and the surrogate upon the questions of fact in controversy, and is not subject to review in any tribunal.

The provisions of the statute regulating appeals from surrogates' courts (2 R. S. 608, *et seq.*) are equally peremptory (§ 98) : " If the circuit judge shall reverse the decision of the surrogate upon a question of fact, an issue *shall* be made up, tried, and determined, as prescribed " in the title of the stat-

·ūtes above· referred to. And no provision is made for a review in such case; and, obviously, because nothing is ·finally determined thereby, but only that a trial of the ·questions shall be had by a jury.

And that no review was intended, is quite apparent, when it is observed, that, by the one hundredth section immediately following, to wit: "An appeal to the Court of Chancery may be entered from the decision of the circuit judge, upon such appeal from the surrogate, when no feigned issue shall have been awarded for the trial of any question of fact," ·which imports, by implication, that the order of reversal upon questions of fact and award, such issue is not the subject of appeal. .Where the decision of the surrogate was reversed upon a question of law, and where it was affirmed, the order of the circuit judge might be reviewed on appeal, and the final decision of the Court of Chancery might be reviewed in the Court for the Correction of Errors.

We have, therefore, on this appeal, no jurisdiction to ·inquire, whether, upon the evidence taken at the hearing before the surrogate, his conclusions of fact were, or were not, according to our estimate of the just weight or preponderance of the evidence, or whether the inferences of the Supreme Court better accord with the conclusions we should form, if that evidence was properly before us. That evidence, we think, is not properly before us for consideration. When, upon that evidence, the two tribunals differed, the statute prescribed a new inquiry before a jury. That, and that only, so far as the controverted questions of fact are concerned, is the sole basis of all subsequent adjudication touching the propriety of admitting the will to probate.

The Code of Procedure has made no change in the rule on this subject. First, such a determination and sending ·the case to trial on the issue, is not a final determination of the questions involved; and, second, the authority to review on appeal from the ultimate and final judgment any intermediate order involving the merits and necessarily affecting the judgment, does not include the order in question. As already observed, the order in question determines nothing,

except that the questions of fact shall be tried by a jury. An example may be supposed, for illustration, which will show that this is clear. Suppose the evidence taken before the surrogate is conflicting upon the question, whether an alleged testator signed the will or it be a forgery, but the preponderance seems to the surrogate to be in favor of the genuineness of the subscription, and he so decides; on the appeal to the Supreme Court, the opposite conclusion seems, to that tribunal, best supported by the evidence, and the decree of the surrogate is, on that ground, reversed, and an issue to try the question is made and sent to the Circuit. Upon the trial there, the contestants establish the forgery by the most convincing testimony, and the jury so find, and a final judgment disallowing the will and annulling the previous probate follows. It could not be for a moment insisted, that, on appeal from the final judgment, it was open to the appellant to argue the first appeal, or that this court had any jurisdiction to inquire whether, upon the evidence before the surrogate, he was justified in admitting the will to probate, and on such inquiry reverse the subsequent proceedings, and so establish an instrument as a will which was found on the trial, and upon full and convincing evidence, to be a forgery. (See *Talbot* v. *Talbot*, 23 N. Y. 17.)

The inquiry before us, therefore, appertains solely to the proceedings which followed the order for the trial of the issue and the judgment of the Supreme Court pronounced upon the verdict of the jury. For, in this case, no question of law has been decided adversely to the appellant, except the principal question arising upon the verdict of the jury, wherein they find that decedent was under restraint when she executed the instrument which is offered for probate as her will. It has not been insisted that any ruling of the judge at the trial of the issues, in receiving or rejecting testimony, was erroneous.

Again, it is not, as we understand, claimed, certainly it cannot be successfully claimed, that if the verdict of the jury, finding that the instrument was executed under restraint, is to stand, the judgment is erroneous.

The case of the appellant, therefore, can, at most, present two questions: Is there ground for reversal in the refusal of the court below to grant a new trial of the issues? or, second, was the final judgment which the Supreme Court pronounced, upon the coming in of the verdict, erroneous?

I greatly doubt the regularity of the motion which was made by the appellant for a new trial at the Special Term of the Supreme Court, and the power of a single judge sitting at Special Term to grant such new trial, if he had deemed the case a proper one for such an order. The appeal from the surrogate was, according to the settled practice in such cases, brought to a hearing in the General Term, and it is at least doubtful whether there is any jurisdiction of such appeals in the court at Special Term. (*Watts* v. *Aiken*, 4 How. Pr. 440; *Wever* v. *Marvin*, 14 Barb. 377.) The court in General Term ordered the issue, and, in my judgment, the question whether or not a new trial of that issue should be granted, belonged to the General Term, and not to a single judge at Special Term. It is true, that the statute gave to the Supreme Court, and not to the circuit judge by whom the appeal was heard, the power to grant a new trial. That power was exercised in General Term under our former system, in force when the statute was enacted, and it is far from clear that any other practice is now permissible.

But, be this as it may, I am of opinion, that, so far forth as the application for a new trial was based, not upon alleged errors in law, but upon considerations addressed to the discretion of the court or its favor, their decision thereon cannot be reviewed here. If no rule of law or principle of equity has been violated to the prejudice of the appellant, I find no warrant for involving the appellate jurisdiction of this court for a review of a motion for a new trial upon newly discovered evidence or surprise, or, still less, upon the ground that the appellant, by cumulative evidence, could show that testimony given on the trial was untrue. Indeed, we do not understand that the appellant insists otherwise, in this court. And he has not called our attention to any errors committed by the judge before whom, at the Circuit,

the issues were tried, nor to any warrant for the suggestion that the case was not fully considered nor fairly tried, except so far as that may be included in his more general claim, that the verdict is a wrong verdict; that the court below ought so to have regarded it, and that this court ought now, on appeal, to reverse the judgment of the Supreme Court which was based thereon, because such verdict was not warranted.

We are, therefore, brought to the narrow questions whether this court can reverse this judgment, on the ground that the verdict of the jury on the trial of the issue directed by the statute, was not warranted by the evidence. And if we have any jurisdiction to do so in any case, then, whether this case is so manifestly erroneous, that, within the settled rules governing the exercise of such a power, we may do so here.

To give the proper answer to these questions, a further reference to the statute is necessary.

By section 58 of title 1, of chapter 6, part 2, it is declared that such issue shall be made up and tried in the same manner as issues awarded by the Court of Chancery. But a new trial of such issue may be granted by the Supreme Court in the same manner as if it had been formed in a suit originally commenced in such court, by section 59. The final determination of such issue shall be conclusive as to the facts therein controverted in respect to the wills of personal estate only, upon the parties to the proceedings, and by section 60. If such determination be against the validity of such will, etc., * * * the surrogate shall annul and revoke the record or probate thereof, if any shall have been made.

These provisions leave no room for doubt of the effect of the verdict in this case, so long as it remains operative. In my judgment it must, by the necessary interpretation of the statute, stand, unless there were such errors in law committed on the trial, or it was so clearly against evidence that it was the duty of the Supreme Court, sitting as a court of law, to have it set aside; for, be it remembered, that the Supreme Court, as those spoken of, was a court of law only, and the

" suit originally commenced in such court," referred to in the statute, must have been an action at law.

The proceeding is a statute proceeding, and although the Supreme Court acted in the matter of hearing the original appeal in the place of the circuit judge, their jurisdiction is, by the statute, a jurisdiction at law, and not in equity.

A doubt has been expressed whether, since the powers of the Court of Chancery have been conferred upon the Supreme Court, the jurisdiction which was here exercised under the statute has not been made as broad as if the matter had been before the court by bill in equity, and the issue had been awarded as in other equity cases.

I think the nature of this appeal, and the proceedings under it, have in no wise been changed by an enlargement of the jurisdiction of the court. The statute still furnishes the guide to the proceeding, and its meaning is not affected by the circumstance that for other purposes an enlarged jurisdiction has been conferred upon the court. (See *Tyler* v. *Gardiner*, 35 N. Y. 596.)

Upon what ground, then, can this court say, that the judgment is erroneous which was based upon the verdict finding that this will was executed under restraint?

Upon such a verdict there could be no other judgment.

Upon what ground can this court say that the verdict ought to have been set aside?

Our attention has not been called to any admission or rejection in violation of any rule of law or equity on the trial of that issue.

It is a decision of an issue, which the legislature deemed it peculiarly proper to submit to a jury, where a difference arose between two judicial officers respecting the facts under examination.

Unless it is so clearly against evidence, or without evidence to support it, that it would have been the duty of the court, as matter of law, to instruct the jury to find the contrary, I do not perceive that this court can interfere with the judgment which necessarily followed, if the verdict was a true verdict.

The evidence of restraint appears to me slight, and were I sitting as a juror, and called upon to pronounce upon the evidence after perusing it in the printed case, I greatly doubt that I could say that the will of the decedent was executed under restraint, or was proved to be executed by her by undue influence.

But we cannot say, that there was no evidence tending to that conclusion, nor can we lose sight of the fact, that there was conflict and contradiction in the testimony, and that the jurors having the witnesses before them, are presumptively better able to judge what weight should be given to their testimony than those who merely read the language in which such testimony is given.

The appellant is clearly right in his claim, that when the competency of the decedent to make a will is established, as it was in this case, and found by the jury, the burden of showing that the will was obtained by undue influence, is upon the party who makes the allegation.

But his claim, that the finding of the jury that the decedent had capacity to make a will is incorrect, with a finding that it was executed under restraint, the restraint in question being such as results from undue influence, confounds two things entirely distinct as grounds for impeaching the execution of an instrument. The latter proceeds upon the assumption that testamentary capacity exists, but that it is not supposed to be freely exercised. The former invalidates the execution, though no influence or restraint is superadded. The decision of the Supreme Court directing probate of the will of Mrs. Gardiner, was reversed, on the ground that it was procured by undue influence, although her testamentary capacity is declared undoubted. (*Tyler* v. *Gardiner*, 35 N. Y. 580.)

A review of all the evidence given on the trial will not be necessary, nor, in the view which I feel compelled to take of our proper duty in reviewing the judgment, would it be profitable; for, as already suggested, although we might conclude that sitting as jurors we should not have found the same verdict, that is not sufficient to warrant a reversal.

Where one tribunal had found the will duly executed, another had differed in its conclusion, the mandate of the statute in such case having submitted the question to a jury for determination, and a verdict having been rendered, it would be an extraordinary exercise of judicial authority, if we were to reverse the judgment which such verdict rendered necessary, on the mere ground that we, as jurors, would have rendered a different verdict upon the evidence. No case has been cited to us, and we have found none, in which the verdict of the jury, rendered under the statute in question, has been disregarded, or held otherwise than conclusive, if there was no error committed on the trial, and upon the whole case the verdict appeared the conclusion of a fair and impartial jury.

It is claimed that the verdict is not controlling, and that like an ordinary feigned issue out of chancery, its office and purpose is to assist the conscience of the court, which may, nevertheless, on the coming in of the verdict, look into the evidence, and if not satisfied with the finding, may order a new trial, or may disregard the verdict and proceed to a determination of the case, according to the judgment of the court itself upon all the proofs.

I apprehend that this is an erroneous view of the effect of the verdict in this proceeding, and that the statute forbids our so regarding the verdict.

True, their opinions delivered in this court in *Schenck* v. *Dart* (22 N. Y. 422), and *Clapp* v. *Fullerton* (35 id. 195), describe the jurisdiction of the Supreme Court on appeals from surrogates, as a jurisdiction in equity, and the hearing as in the nature of a rehearing in equity. That is, no doubt, true of those appeals which come to that court as a jurisdiction supplanting that of the Court of Chancery; but neither those cases, nor in my judgment any sound interpretation of the statute would warrant the Supreme Court, in a proceeding like the present, in disregarding the verdict and proceeding to a decree in conflict therewith, nor can we, as an appellate court, do so when the court below had no such power.

Unless, then, we can say, that the circumstances of this

case made it the duty of the Supreme Court to order a new trial, we have no alternative but to affirm the judgment.

The decedent, at the time of the execution of the instrument in question, was upward of eighty years of age. She had two children, both past middle life, one (the contestant) having a family of five children, the other, the appellant, being childless. By the instrument in question, she wholly disinherits the former, and bestows her very considerable estate upon the latter, the small legacies given to others being so subject to his interest and control as to be hardly deemed exceptions.

Now, it is quite true, that a person is, under our law, at full liberty to dispose of his estate to such persons as he sees fit; living or dying, he is not prohibited indulging, in this regard, his passions, his prejudices or his caprices, and his will is not to be thwarted or disregarded by the judgment of any tribunal, whether of law or equity, because his dispositions are by them deemed unreasonable or prompted by passion, prejudice or other unworthy motive. But the extraordinary act of a mother in disinheriting a child with whom she had been upon terms of kind and affectionate intercourse and matured confidence for fifty years, and until the circumstances arose which brought her into exclusive, intimate and constant intercourse with the favored brother, and into circumstances furnishing the opportunity to exert the influence which is alleged to have produced the will in question, is so marked, so at variance with the ordinary conduct of a parent, so hostile to the impulses of the maternal heart, as of itself to suggest the inquiry, what produced such a result? On the trial of the issue in this cause, the nature of the dispositions made may be considered by the jury in aid of the inquiry, was the will the free expression of the mind of the decedent?

Again, the testimony given on behalf of the appellant to explain or account for such a disposition of the estate of the decedent shows, that the act of disinheriting was attended with manifestations of bitterness, indicating an entire alienation from all feeling of maternal regard, and, according to

his own account thereof, this was in some manner produced during the last two years of her life, and while she resided with him, and with a person who was, whether with or without cause, manifestly unfriendly to the contestant.

It was certainly competent for the jury to consider this fact, and inquire, whether, according to the ordinary history of maternal life, it was probable, that a mother, after half a century of affectionate intercourse with her son, would go to her grave, and make her earthly preparation therefor, in the indulgence of such feelings toward him, if they were not stimulated by the persistent suggestions of those by whom she was constantly attended.

Again, there was evidence, that, at about the time of the execution of the will in her last illness, there was a reluctance to permit the contestant, her son, to have any private interview with his mother. This evidence, though not very full, because it does not appear that such an interview was sought on more than two occasions, was pertinent, and would probably bear upon the question in issue. There was some evidence, also, that intercourse with his children, her grandchildren, was prevented. The inference would not be unreasonable, that there was a purpose to prevent, if possible, the awaking of those feelings of tenderness usually strong and influential in the mind of a grandparent, which might prevent so unrelenting and bitter an exclusion of them and their father from the inheritance.

There was evidence warranting a finding of both motive and opportunity to employ the influence which is alleged. The appellant is made almost sole beneficiary; the decedent resided with him during the last two years of her life, unattended by any person who had a regard for the relatives of the deceased, or who had a motive to guard her last days from the approach of such an influence; on the contrary, her chief attendant was a person who had been the cause of the contestant's declining to visit at that house; whether her presence there did or did not justify the contestant in this, there is evidence that the result was ill will toward him, and some evidence of a threat looking to revenge.

There is evidence, that alleged causes of offense, or at least one such cause, was dwelt upon by the appellant and such attendant in the hearing of the decedent, and that so frequently, that the attending physician declares it, in language quite expressive of its reiteration in her ears, " the whole burden of their song." It was not unreasonable in the jury to infer, that if an influence tending to provoke the decedent into a condition of mind favorable to the accomplishment of a purpose to effect the disinherison of her son was plied "so frequently," that the attending physician "hardly remembered any thing else" that they said, similar influences were probably at work when no person was present to hear. And the circumstance, that the fact itself was of slight importance, easily susceptible of an explanation quite consistent with due respect to his aged mother, and especially the fact, that no complaint of it appears to have ever been made by her to the offending son, might naturally suggest, that other influence than the promptings of natural affection, or the dictates of parental regard, were operating upon her mind.

Again, the will was drawn in his own favor by the appellant himself, a circumstance often characterized by the courts in England and this country, and by recent cases in this State, as exposing the will to suspicion of being procured by his influence, or of those who were at work with him to promote the result.

To these add the fact, that only two years before, and shortly before she went to reside with the appellant, she had made a will in which she divided her property, or the tranquil enjoyment of it, equally between her two sons. The jury may have thought, that no subsequent occurrence alleged by the appellant, was a sufficient or even probable reason for so sudden and violent a departure from a purpose which had matured during the childhood, youth and manhood of her children, and was so accordant with the usual and natural impulses governing such dispositions by a parent.

These circumstances taken together are so like many of the facts in the case of *Tyler* v. *Gardiner* (35 N. Y. 559), and *Delafield* v. *Parish* (25 id. 88), that the opinions in

those cases and the authorities there cited might be largely quoted from in support of the finding of the jury here; but it is not on the ground that this court, notwithstanding the countervailing testimony, would have rendered such a verdict, that I place my conclusion that we cannot reverse the judgment, but that the verdict is not so against evidence or without evidence that we can say it was erroneous to proceed thereupon and pronounce judgment.

The appellant gave evidence in explanation of the proofs above adverted to, and, in some particulars, in contradiction thereof. It is impossible to say, that the conduct of the contestant was not liable to animadversion, and well suited to awaken the displeasure of his mother, as well as furnish the opportunity to the appellant and the attending nurse to stimulate and increase that displeasure for the accomplishment of an unworthy purpose if they desired. The testimony given by the appellant himself contains a full explanation of the manner in which the will was prepared, and furnishes an entire exoneration of himself from the imputation of having promoted the dishonor of his brother. He also suggests a reason why, in his judgment at least, it was not unreasonable that his mother should give to him the principal share, at least, of her estate, viz., that at a time when his own pecuniary embarrassments made it necessary or expedient that his real estate should be brought to a forced sale, his mother became the purchaser at a very small cost, and that the property so purchased constituted the chief part of what she had to dispose of by will. I do not understand him as wishing to be understood that the title was acquired by her by a devise or scheme by which she was to obtain the legal title for a sum much less than the actual value, and hold it upon a secret trust for his benefit; and if in truth the purchase by her was in good faith for the then value of the property, there would seem no very clear reason why he, more than his brother, should receive the profits resulting from its increase in value. But this explanation was a proper one for the consideration of the jury. It is, however, prudent to observe that no such idea appears to have been present to

the mind of the deceased or of the appellant himself, when the will of 1861 was drawn and executed.

Other explanations were given and testimony tending to show, that the purpose to exclude the contestant was formed some months before the will was made, and if upon all this proof the jury had concluded that the deceased, in making the will, acted under the influence of real or supposed provocation, in the indulgence of passion, or under the influence of a perverted and groundless idea that the fifth commandment required her to punish the misconduct of her son by excluding him from any portion of her estate (which the testimony shows was not unfrequently suggested in the family), but that she nevertheless acted freely and in the expression of her own deliberate purpose, without fraud or undue influence from others, the verdict would not have been liable to impeachment for want of evidence to sustain it ; and, however unreasonable or even unjust the will may be, it would stand as her will and be operative because it was her will.

The case was one in which intelligent minds, free from prejudice or partiality, seeking only after the truth, might reasonably differ in their conclusions upon the fact in question. In such case the verdict must be held conclusive.

The judgment appealed from must therefore be affirmed.

All concur with WOODRUFF, J., except HUNT, Ch. J., who was for reversal, and GROVER, J., not voting.

Judgment affirmed.