HIRAM B. THURBER AND ANOTHER, RESPONDENTS, v. JOHN M. CHAMBERS AND OTHERS, APPELLANTS.

*Devise of real estate — charge upon — " Heirs " — effect and meaning of — Code,*
*§ 270 — reference — effect of report.*

A testator, after having devised certain real estate to his widow for life, remainder to an adopted son and his heirs, directed that certain legacies should be paid, and that one W. should be supported out of his estate for her natural life, and further provided as follows: "The estate hereby devised to H. T. [the son] is charged with the payment of the bequests mentioned in this section of this will, and the same are a mortgage on the estate so devised."

The son died in the lifetime of the testator, leaving ten children, of whom the plaintiff was one. The plaintiff, after the death of the testator, expended $3,416.43 in the support of W. The plaintiff, claiming an interest in the land under the will, brought this action to secure a partition thereof, and to have the amount expended by him in the support of W. declared a lien thereon. The land was sold for $2,282.29. *Held,* that it was immaterial whether or not the devise to plaintiff's father had lapsed, as the money expended by him in the support of W. was a lien thereon and exceeded in amount the value of the land.

The effect and meaning of the word "heirs" considered.

Under section 270 of the Code, the court may, by consent of the parties, order a reference to determine any issue or question of fact, instead of directing the same to be tried by a jury.

When in such cases the referee is directed to report his proofs with his finding, his report has the same effect as the verdict of a jury would have, and the judge is at liberty to form his own conclusions of fact and of law upon the evidence, using the report as merely advisory.

APPEAL from a judgment in an action of partition, directing a sale of the premises and distribution of the proceeds.

Two questions were presented by this appeal: First, whether or not certain real estate formerly owned by one Kelsey T. Thurber, and by him devised to an adopted son, who died during the life-

time of the testator, passed to his children or to the heirs at law of the testator; and, second, whether or not the plaintiff was entitled to charge upon the said land the amount expended by him in supporting one Elsie Whitney, whose support and maintenance was provided for by the will. The clause charging the payment of the legacies, including the support of Elsie Whitney, upon the land, was as follows:

"And I also will and direct that Elsie Whitney, an aged lady who has resided with me for nearly forty years, shall be supported, maintained and provided for out of my estate during her natural life, and the estate hereby devised to Hiram B. B. Thurber is charged with the payment of the bequests mentioned in this section of this will, and the same are a mortgage on the estate so devised to the said Hiram."

On the day of making his will the testator conveyed, by deed, one half of his real estate to his said son H. B. B. Thurber. By an order of the court, dated October 14, 1873, it was referred to Leslie W. Russell to take the proofs upon the issues and report the same with his findings of fact; and also to take and report the proofs on the default as required by the seventy-ninth and eightieth rules. The referee made his report with proofs annexed, dated March 28, 1874. There was no conflict of testimony. The plaintiffs filed exceptions to this report, because, as they claimed, it omitted to find material facts established by the evidence; also, because it found certain facts which were not proven; and also because it contained conclusions of law which the referee was not authorized to make, and which were erroneous. The plaintiffs brought the cause to final hearing upon the report, proofs and exceptions. On this trial the original will was put in evidence. The court gave judgment May 5, 1874, allowing plaintiffs' exceptions and modifying the report accordingly.

*Vary & Stone* for the appellants. The Special Term had not authority to change the findings of fact made by the referee. The Special Term has not the right to change, modify or reverse the finding of a jury or referee, so as to conform the facts to the opinion which the judge holding such term may entertain of the case. It was not the practice in chancery for the court to reverse or alter

the finding of the facts made by a master. The practice was to refer back to the master to amend his report according to the exceptions as allowed. (*Demott* v. *Benson*, 4 Edw., 297, 307 ; *Clark* v. *Willoughby*, 1 Barb. Ch., 68.) If incorrect in part, it might be recommitted for correction of errors and established as to the residue. (*Callender* v. *Cosgrove*, 17 Conn., 2.) The most a Court of Chancery would do was to correct mere errors of calculation. (*Utica Ins. Co.* v. *Lynch*, 2 Barb. Ch., 573.) The devise of real estate to Hiram B. B. Thurber lapsed by the death of said Hiram before the death of testator. At common law all devises lapse by death of the devisee before the testator. (2 Black. Com., 513 ; *Chrystie* v. *Phyfe*, 22 Barb., 195 ; *Campbell* v. *Rawdon*, 19 id., 499 ; *Bishop* v. *Bishop*, 4 Hill, 138 ; *Van Buren* v. *Dash*, 30 N. Y., 393.)

*Edward C. James* for the respondents. The appellants never had any interest whatever in the property in question. At the time this will was made, Hiram. B. B. Thurber had ten children living on the adjoining farm. They answered the description of the words " and his heirs," and as such took a vested remainder under this devise. (*Moore* v. *Littel*, 41 N. Y., 66 ; *Sheridan* v. *House*, 4 Abb. Ct. of App. Dec., 218 ; 4 Keyes, 569 ; *House* v. *Jackson*, 50 N. Y., 161, 165 ; *Campbell* v. *Rawdon*, 18 id., 412 ; *Chinn* v. *Keith*, 4 N. Y. S. C., 126 ; *Vannorsdall* v. *Vandeventer*, 51 Barb., 137 ; *Heard* v. *Horton*, 1 Denio, 165.) The word " heirs " will be construed " children " whenever that appears to be the intention of the testator. (*Taggart* v. *Murray*, 53 N. Y., 233, 238 ; *Bundy* v. *Bundy*, 38 id., 410, 421 ; *Kiah* v. *Grenier*, 56 id., 220 ; *Prindle* v. *Beveridge*, 7 Lans., 225.) Even at common law, a devise to "A and his children" vested an estate in them as a class with their father, if he had any children living at the time. ( *Wild's Case*, 6 Coke, 17 ; *Oates* v. *Jackson*, 2 Strange, 1172 ; *Ex parte Williams*, 1 Jac. & Walk., 91, note ; *Cook* v. *Cook*, 2 Vern., 545 ; *In re Sanders*, 4 Paige, 293, 297 ; *Hannan* v. *Osborn*, id, 336, 341, etc. ; *O'Brien* v. *Heney*, 2 Edw. Ch., 242, 248, 249.) It is quite immaterial in this case, whether the estate in remainder in the Kelsey T. Thurber half, passed to the heirs of the adopted son or to the heirs of the testator, for it is expressly charged with the

money legacies, and mortgaged for the support of Elsie Whitney, and these claims amount to nearly double the sum which it produced on the sale. There is nothing left for the owners of the fee. The support of Elsie Whitney is charged upon the estate devised, and not on the devisee; upon the remainder, and not on the life estate; and it, together with the legacies, is declared to be a mortgage on such estate in remainder. (*Godard* v. *Pomeroy*, 36 Barb., 546; *Birdsall* v. *Hewlett*, 1 Paige, 32; *Hogeboom* v. *Hall*, 24 Wend., 146.) "An equitable mortgage may be created by any writing from which the intention to create it may be shown." (*Chase* v. *Peck*, 21 N. Y., 581, 583.) The obligation to pay it is imposed by statute upon the devisee or heir, and not on the personal representatives. (1 R. S., 749, § 4.) If the devise did not lapse the plaintiff is entitled to pay on the principle of contribution. (*Stevens* v. *Cooper*, 1 Johns. Ch., 425, 430; *Cheesebrough* v. *Millard*, id., 400.) But if the devise lapsed, equity does not allow the heirs to take the land and defraud the plaintiff of all compensation. In such case the party who has paid the mortgage is entitled to enforce the lien, on the principle of equitable assignment or subrogation. (1 H. & W. Lead. Cas. in Eq. [3d ed.], 152–156; 2 id., 230, 231; *Matthews* v. *Aiken*, 1 N. Y., 595, 600, 604, 605; *Carter* v. *Jones*, 5 Wend., 193; *Croft* v. *Poole*, 9 Watts, 451, 455.)

LEARNED, P. J.:

Kelsey T. Thurber, in 1850, made his will. 1st. He gave his personal estate to his wife. 2d. He gave her a life estate in his land. 3d. He gave as follows : " At the decease of my said wife I give, devise and bequeath to my adopted son Hiram B. B. Thurber and his heirs, all the real estate of which I may die seized, so that at my wife's death he and his heirs shall be seized thereof in fee." 4th. He gave some small legacies, and charged them and the support of Elsie Whitney on " the estate hereby devised to Hiram B. B. Thurber." 5th. In case he should survive his wife, he gave all his estate, real and personal, " to my said adopted son Hiram B. B. Thurber and his heirs," subject to said charges.

Hiram B. B. Thurber died in 1851, leaving ten children, of whom plaintiff is one. Kelsey T. Thurber died in 1857. His

heirs at law are the descendants of four sisters, who are parties to this action. Hiram B. B. Thurber was no blood relation to Kelsey T. Thurber.

The heirs at law of Kelsey T. Thurber claim that the devise to Hiram B. B. Thurber lapsed by his death before the testator. The plaintiff claims that it did not. The Special Term held that the words, " and his heirs," meant "and his children ; " that they were intended to designate the ten children of Hiram B. B. Thurber, then living, and to vest an estate in them as a class with their father. And the Special Term held the devise did not lapse by the death of Hiram B. B. Thurber, but that it vested in his children, and that the heirs of the testator took nothing.

There is no evidence what children of Hiram B. B. Thurber were living when the will was executed. One of his children died before the testator. Hiram B. B. Thurber was not a descendant of the testator. There is no question, then, that the devise was not prevented from lapsing by the statute. (2 R. S., [m. p.] 66, § 47 ; *Van Beuren* v. *Dash*, 30 N. Y., 393.)

The common mode of expressing a devise, or a grant in fee, whether it be a fee simple, or a fee in remainder, is to devise or grant to A and his heirs. It was by statute that the use of the word " heirs " became unnecessary. (1 R. S., [m. p.] 748, § 1 ; *Vanderzee* v. *Vanderzee*, 36 N. Y., 231.)

If Hiram B. B. Thurber had survived the testator, it does not seem to me that any one would have doubted that he took a fee in remainder after the widow. In the case of his thus surviving, it would have been, as I think, impossible to hold that he and his ten children took an estate in common in the remainder. It is true that in this view of the case, the words, " and his heirs," are surplusage. But the experience of every lawyer tells him that their use is more common than their disuse, when a fee is to be devised or conveyed. And this is especially true when the draughtsman's experience goes back of the Revised Statutes. There are cases in which a testator has plainly used the word " heirs " with the meaning of children. But they are cases very different from the present.

In *Bundy* v. *Bundy* (38 N. Y., 410), the devise was to C, " and in case the said C should die without heirs," then to certain persons. And the question was, whether the testator probably meant

lineal heirs, or collateral as well as lineal. And it was held that he meant lineal heirs or descendants. And the reason given was, that, in another similar clause in the will, the devise over was to the collateral heirs of the devisee; and they could not therefore have been intended by the words, " die without heirs."

In *Vannorsdall* v. *Van Deventer* (51 Barb., 137), a testator devised " to the legal heirs of A, deceased," and, in a subsequent clause, " to the heirs of V. D." V. D. was living, and it was held‧ that the devise was to his children.

In *Taggart* v. *Murray* (53 N. Y., 233), the devise was to C, and at her death to pass to her heirs, and if " she leaves no heirs," to be disposed of by her will. It was held that heirs meant issue. It was not to be supposed that the devisee's power over the property depended on the remote contingency of the extinction of heritable blood.

This is not a case which is aided by the abolishment of the rule in Shelley's case. (1 R. S., [m. p.] 725, § 28.) It cannot be claimed that (after the life estate of the widow), a life estate was given to Hiram B. B. Thurber, and the remainder to his heirs. There is nothing to indicate this. And, indeed, the Special Term did not take that view, but held the devise to be to Hiram B. B. Thurber and his children, as tenants in common. It seems to me that such an intention, by which Hiram B. B. Thurber and each of his children were to have one twenty-second part of a farm of about 170 acres, could not have been in the mind of Kelsey T. Thurber. It would have been so strange a disposition of the land, that, if it had been adopted by him, he would have expressed it unmistakably.

But I do not think that this question is material in the disposition of this case. The property has been sold. The avails of the half of the real estate which passed by the will are only $2,282.29. It is found by the referee that the value of the support of Elsie Whitney was $3,416.43. The plaintiff supported her; and her support was a charge on the land; and, on a fair construction, it was a charge on the remainder, after the estate of the widow. I think he is equitably entitled to be paid from the avails, as a *quasi* assignee of Elsie. There remains nothing therefore for the appellants.

An important question of practice has arisen in this case. The action is for partition, and for the enforcement of the equitable claim of the plaintiff to be repaid for his support of Elsie Whitney. Partition was equally an equity, as a common-law proceeding (2 R. S., [m. p.] 329, § 93, from the Laws of 1813); and the claim to enforce the plaintiff's lien was properly equitable. Issues therefore were triable by the court, and the parties had no right to a jury trial. (Code, 254; *McCarty* v. *Edwards*, 24 How., 236.) In this present case there were some issues, perhaps not very important, and some defendants, absentees, were in default. The proper course, therefore, as to the absent defendants, was a reference under Rules 79 and 80. As to the issues, by consent of parties, the referee was to take proof of the respective parties, and to report with his findings of fact.

By reference to section 254, it will be seen that, in equity cases, the court may order the issue, or any question of fact, to be tried by a jury. This is a practice corresponding to the old feigned issue in chancery. Or the court may refer, as provided in sections 270, 271. Section 271 provides for compulsory references, where an account is involved, and is not of general application. Section 270 provides for references by consent. Therefore, in an equity action, the court, by consent of parties, instead of the feigned issue to be tried by a jury, may order a reference. It is a reasonable construction then, that the effect of the referee's report in such a case — that is, where he is to report the proof with his findings, in an equity action — should be substantially the same with that of a verdict of a jury in a similar action.

What, then, was the effect of a verdict, on a feigned issue out of chancery? It was simply to assist the chancellor's conscience. " The jury and the verdict are things which the court may use or let alone as it sees good." (*Lansing* v. *Russell*, 2 N. Y., 563 ; *Marvin* v. *Marvin*, 4 Keyes, 9 ; *Armstrong* v. *Armstrong*, 3 My. & K., 45.)

In the present case, therefore, although it may not have been strictly right to " strike out " a part of the referee's report, yet I think that the judge at the Special Term was authorized to form his own conclusions of fact and of law upon the evidence, using the referee's report as only advisory. (*Moore* v. *Metrop. Bank*, 55

N. Y., 41; *Brinkley* v. *Brinkley*, 56 id., 192.) And the appeal to the court comes up from the conclusions of fact and of law found by the judge at Special Term, and not from the referee's report.

The judgment should be affirmed.

Present — LEARNED, P. J., and BOARDMAN, J.

Judgment affirmed, with costs.