## WILSON *v.* HETTERICK.

*In the matter of proving the last Will and Testament of* NATHANIEL WILSON, *deceased.*

WHERE there has been such a lapse of time between the execution of the will and the examination of the subscribing witnesses, as to justify the inference that their recollection may be imperfect, due celebration of the necessary forms may be presumed, unless there be evidence repugnant to such a presumption. There must be enough in the remote date of the transaction and in the circumstances, to lay the defect of the proof upon the infirmity of the human memory.

Not more than three months intervening between the execution of the will and the probate, and the witnesses agreeing substantially in their statements, and seeming to remember the circumstances with essential accuracy,—Held that due execution could not be presumed, and there being no evidence of a testamentary declaration, that the will was not validly executed.

The testamentary declaration is essential to due execution. It must be made at the time, be open and manifest. The testator must declare the instrument to be his will; and it is not sufficient, for the witnesses to conjecture the character of the instrument.

F. A. TALLMADGE, *for Executor.*
J. H. McCUNN *and* EDWARD SANDFORD, *for Heirs.*

THE SURROGATE. The probate of the will of the decedent is opposed, on the ground of insufficient proof of formal execution, pursuant to the provisions of the statute.

The decedent signed the will in the presence of the subscribing witnesses, and they subscribed in his presence and at his request. Neither of the witnesses proves any testamentary declaration.

The decedent was in bed, sick. He sent for the witnesses. They came. He took the instrument from under his pillow, and said he had " an instrument in writing " he wanted them to witness. He took the paper from an

envelope, opened it, handed it open to one of the witnesses, Mr. Perry, who put it on the table. The witnesses subscribed it, and it was returned to the decedent, who replaced it in the envelope.

Mr. Drake, one of the witnesses, states that the decedent called the document " an instrument in writing,"—that no part of it was read aloud, and the decedent did not request him to read any part of it,—that he did not read any part of it; but, while he was signing, he took a glance at the attestation clause, and, from the heading of the document, " Know all men by these presents," and from what he read below, he judged it to be a will. In respect to the attestation clause, he says, " I read the first line straight through, and catched the rest as I was signing—backwards and forwards. I read the heading of the will,—that is, the first line. I read the words, ' attesting witnesses,' at the end of the attestation clause. Those are all the words I read in the attestation clause." This witness states, that if the decedent had been in perfect health, and had requested him to sign the paper, he would have known it to be his will. When interrogated whether the decedent declared it to be his last will and testament, he answered, " I did not hear him make use of those words. Did he say it was his will? He said it was an instrument of writing. Did he say of what kind or purport? I don't recollect that he did. Can you say that he did not say it was his will? No. I cannot say that. Do you mean, then, only to say that you do not recollect he declared it to be his will? I was in only for a moment. May he have declared it to be his will, and you have forgotten it? I think, under the circumstances, he might, for I was somewhat affected."

Mr. Perry testifies that he went into the decedent's room before the arrival of the other witness. The decedent said " he had sent in for Mr. Drake, that he wished me and Mr. Drake to witness an instrument in writing that he had. He did not say what it was, nor did I ask him."

After he had stated with particularity the circumstances that transpired in respect to the execution of the will, the following questions were put to the witness, and answers given: "Did the decedent say° what the paper was? I don't recollect that he did. Did you know it to be his will? I read a line or so of the last part of it, but not enough to know it was his will. I could not say positively it was his will. Can you be positive he did not say it was his will in the presence of yourself and Mr. Drake? I don't think the word *will* was mentioned. I could not be positive he did not say that paper was his will. I don't recollect his speaking the word *will*, while I was in his house. It might have been passed. He did not ask me to read any part of it. I had reason to suppose it was his will, because he was very sick, and was not expected to live, and from previous conversations between me and him. I don't recollect any other particular reason for supposing it was his will. If I had been called to witness this instrument under other circumstances, I don't think I should have concluded it was his will." Again, "If the decedent had said to me in so many words, 'this is my last will and testament, and I want you to subscribe to it,' I think I should have remembered it. From what he then said, disconnected from any previous conversation, and from what you saw in the paper, did you infer or not, it was his last will and testament? I inferred it was his will; but could not have so inferred from what he then said, and what I saw of the paper, had it not been for other and previous circumstances. What other circumstances combined with these produced this inference? One circumstance was, that we had often conversed together of the difficulty in settling estates without wills. We had several such conversations during the time he was complaining, probably two or three months previous."

The instrument offered for proof was executed on the 7th of July last, and the witnesses were examined on the

30th of September. Where there has been such a lapse of time, between the act and the time the witness is called upon to testify concerning it, as to justify the inference that his recollection of the circumstances may be imperfect, due celebration of the forms necessary to make a valid will may be presumed, unless there be evidence repugnant to such a presumption. To authorize an inference of this kind, however, it is not sufficient for the witnesses merely to say, they do not recollect, or that the requisite form may have been complied with and have escaped their memory. But there must be enough in the circumstances, and the remote date of the transaction, to lay the defect in the proof upon the infirmity of the human memory. In the present case, scarcely three months had intervened between the signature of the paper, and the examination of the witnesses. They seem to remember the circumstances with essential accuracy, and agree substantially in their statements. They concur in saying that the decedent termed the document he requested them to attest, " an instrument in writing," and that he did not declare it to be his will. That he termed it an instrument in writing they assert without qualification; that he did not declare it to be his will they do not state positively, though I think it manifest they were both of opinion that he did not. If we speculate as to probabilities, it would appear strange if they should remember that he called the paper an instrument— a general term—and forget that he declared it to be his will—a special term, and clothing the document with a special interest. And as they recollect other and unimportant particulars with considerable minuteness, how unlikely is it they have forgotten an essential declaration, of a character to attract their attention, and impress their feelings and memory! One of the witnesses testifies that he should not have inferred the instrument to be a will, from what transpired at the execution, disconnected from other and previous circumstances. The other witness says

that he supposed it to be a will from what he saw of it whilst about to attest it. The parts of it which he says he read or glanced at, would not justify such a presumption. But the ascertainment by the subscribing witnesses of the testamentary nature of the paper, must not be conjectural or derived from accidental inspection. The testamentary declaration must be open and manifest, and intentional. The minds of the parties must meet on that point. The declaration must be made at the time, and it is an essential part of the transaction then attempted. The witnesses cannot spell it out by a hasty glance at a word here and there, or by connecting present acts with previous conversations. The testator must know that the witnesses know the testamentary nature of the act—and *vice versa;* and this mutual knowledge must arise from something said, done, or signified contemporaneously with the execution of the instrument. I am satisfied, from the evidence, that there was no testamentary declaration made by the decedent, at the time he subscribed the will now before me. And though it may seem hard to deny probate because of the omission of such a ceremony, in a case where the entire will is in the decedent's own writing, and there can be no doubt of his intention; yet the statute acts upon general rules and principles, and it is beyond the discretion of the judge to relax its force, to suit his views of the hardship of a particular case plainly within the scope of the statute. I must therefore pronounce sentence rejecting the will.