NEW YORK COUNTY—HON. CHARLES P. DALY, ACTING SURROGATE—
November, 1862.

## SCOTT *v.* MONELL.

*In the Matter of the Accounting of the Executrix of* ALEXANDER L. M. SCOTT, *deceased.*

A direction in a will that the executors invest a certain sum of money in the purchase of real estate, in their own names, in trust, and apply the income of it to the support and maintenance of the widow during her life, and to the support and education of two infant children, until they should become of age,—*Held,* void, as suspending the power of alienation for a longer period than that of two lives in being. A limitation upon minorities is a limitation upon lives.

Such a direction is not rendered valid by a subsequent provision of the will, that upon the death of the widow the sum so directed to be invested should become a part of the residuary estate.

It can make no difference whether or not any further limitation would be cut off by the widow's death during the minority of the children. The existence of a possibility that the trust might be carried over beyond two lives is sufficient to render it invalid.

An authority to executors to sell real estate in a certain contingency, and divide the proceeds among certain specified persons, does not vest the estate in the executors. It is simply a power, and the land passes at once to the devisees, subject only to the execution of the power.

The testator bequeathed personal property to his executors, to be held in trust until his infant son should become of age, but made no disposition of the income and profits that would arise from it before its distribution.

*Held,* that though the will did not in terms direct an accumulation, the direction led to that result, and the appointment of a time for the division was void.

The consent of infant heirs cannot be made the ground of any order which may prejudice their rights.

Thus, the written consent of the heirs (two of whom are infants), that an outstanding mortgage on a farm, devised by the testator to the widow, should be paid out of the personal estate, or that the widow should have the use of a certain sum of money during her pleasure, is invalid, and does not relieve the widow from her liability, as executrix, to account therefor.

The rent of a pew in church, rented by the widow for the use of herself and the children, after the testator's death, is not a charge upon the personal estate, and cannot be allowed to her on her accounting as executrix.

The testator, Alexander L. M. Scott, departed this life on the 31st day of August, 1857, leaving a will bearing date the 8th day of January, 1857, and leaving him surviving, his widow, Margaret M. Scott, and his children, James O. Scott (afterwards declared to be a person of unsound mind, and represented in this proceeding by John J. Monell, his committee), John M. Scott, Fanny L. Scott, and Gilbert C. Scott—the two latter, minors.

By the second clause of his will, the testator gave his wife his dwelling-house, &c., situate at No. 582 Broome-street, in the city of New York. This devise was revoked by a codicil to the will, bearing date the 17th day of August, 1857, and in lieu thereof he gave her his farm, &c., situate in Orange county, New York.

By the third clause of the will, the testator gave to his executors and executrix fifty thousand dollars, to be invested for the support of his wife during life, and of his two children, Louisa and Gilbert, during their minority. (This amount was reduced by the codicil to forty thousand dollars.)

By the fourth clause, he directed that in case his wife should marry again, she should have the income of thirty thousand dollars, only during life, and that the income of the balance of the fund should be for the benefit of said minor children. This clause also provides that upon the death of his wife, the sum invested and set apart for her should become a part of his residuary estate.

By the sixth clause, he directed that on his son Gilbert becoming of age (or if he should die before that time, then in a reasonable time thereafter), his whole estate (except the fifty thousand dollars before invested and set apart), should be sold, unless the same could be divided to the satisfaction of all concerned.

By the seventh clause, he directed that the share of his estate given to Louisa should be invested, and the income thereof only should be paid to her during life.

By the remaining clauses of his will, the testator gave his

executors and executrix power to sell his real and personal estate, and appointed his wife executrix, and his son James O. Scott, and his friend Matthias Clark, executors thereof.

The will was admitted to probate on the 8th day of October, 1857, and shortly thereafter letters testamentary were issued thereon to the persons named therein as executrix and executors.

Shortly after the death of the testator, his widow loaned the sum of forty thousand dollars, belonging to the estate, to one John W. Lewis, taking his bond and mortgage therefor in her own name. The interest received by her from Lewis, subsequently, she appropriated to her own use, and for the support of her two minor children.

She also invested the sum of seven thousand seven hundred and fifty dollars, of moneys belonging to the estate, in the purchase of a house and lot in Thirty-fourth-street, in the city of New York, the deed of which was taken in her own name.

She also paid the sum of nine hundred and eighty dollars as interest due upon a mortgage upon the farm in Orange county, which had been devised to her by the codicil in lieu of the Broome-street house.

On the 5th of October, 1859, the executrix, on behalf of herself and the executors named in the will, applied to the surrogate for a final settlement of her accounts as such, and afterwards filed her separate account.

In the accounts filed by her, Mrs. Scott credited herself with the sum of $11,663.87, being the aggregate amount of interest received by her from John W. Lewis on the forty thousand dollars mortgage, and which she had expended for herself and her two minor children. This credit John J. Monell, as committee of James O. Scott, objected to, on the ground that the trust created by the third clause of the will (under which Mrs. Scott claimed the right to appropriate the money in the manner above stated), was void, as it suspended the absolute power of alienation for a longer period than that allowed by the statute. Other objections to the account

were made, which appear in the opinion. On the part of the executrix, it was claimed that the payments with which she sought to credit herself, were all made by the advice and consent of all the children, and were formally ratified by them in writing.

LORD & BOLTON, *for Monell, the Committee, &c.*

I. The trust which the testator attempted to create by the second clause of the will is void, as it suspends the absolute power of alienation for a longer period than that allowed by law. (3 *Rev. Stat.*, 5 ed., 75, § 1.) (1.) Each minority counts a life; or, in other words, a limitation upon minorities is a limitation upon lives. (*Hawley* v. *James*, 16 *Wend.*, 61; reversing 5 *Paige*, 318, 445; *Bowers* v. *Smith*, 10 *Id.*, 193.) (2.) If there is a possibility of the limitation extending over two lives in being at the death of the testator, it is void. (*Vail* v. *Vail*, 7 *Barb.*, 236; *Taylor* v. *Gould*, 10 *Id.*, 391, 398; 4 *Kent*, 283; 4 *Cruise*, 449.) (3.) There was such a possibility in this case.

II. The direction contained in the fourth clause, that upon the death of his wife the sum set apart for her should become a part of his residuary estate, does not relieve the trust from the imputation of illegal perpetuity. (1.) No such direction is contained in the second clause of the will, by which this trust was sought to be created, and it is quite clear that the provision quoted from the fourth clause was solely intended to meet a contingency which might arise in the event his wife should marry again. (2.) It is clear that the testator intended, by the second clause of the will, that his minor children should have the benefit of that fund during minority (or so much of it as might be necessary for their support). (3.) The fourth clause directs that the fund set apart for her (his wife's) benefit, should become a part of his residuary estate. There was no such fund set apart by the second clause, as that fund was for the joint benefit of herself and her minor children. (4.) This fund is specially excepted from the general division provided for by the sixth clause of the

will, and which was to take place if Gilbert died during minority ; and this exception shows that the testator did not design that the trust should cease upon the death of either of the *cestuis que trust.*

III. The provision contained in the sixth clause, suspending the final distribution of the estate until the death of Gilbert, or his arrival at majority, was also void. (3 *Rev. Stat.,* 5 ed., 75, § 13.) (1.) A trust for the accumulation of rents and profits, for both adults and minors, is void as to the direction to accumulate. (*Hawley* v. *James,* 16 *Wend.,* 61 ; *Boynton* v. *Hoyt,* 1 *Den.,* 53.) Indeed, if there is a possibility that the accumulated fund may go to an adult, the direction to accumulate is void. (*Harris* v. *Clark,* 7 *N. Y.* [3 Seld.], 242.) (2.) An implied direction to accumulate is equally void with an express direction. (*Hawley* v. *James,* 5 *Paige,* 318, 481 ; *Vail* v. *Vail,* 4 *Id.,* 317.) (3.) The direction given by the sixth clause, necessarily leads to an accumulation ; and consequently the appointment of a further and distant time for the division of the personal estate, to which such an accumulation is a necessary incident, is void. (*Converse* v. *Kellogg,* 7 *Barb.,* 576, 597.)

IV. It does not follow, however, that the personal estate is to be distributed as in case of intestacy. The bequest to the residuary legatees is valid, and it is only the direction (express or implied) to accumulate which is void. The consequence is, that the residuary legatees are entitled to distribution immediately. (*Hone* v. *Van Schaick,* 20 *Wend.,* 564 ; 9 *Paige,* 521 ; *Jennings* v. *Jennings,* 5 *Sandf.,* 263 ; 3 *Seld.,* 547 ; 1 *Hill,* 492 ; 1 *Den.,* 646 ; *Williams* v. *Williams,* 8 *N. Y.* [4 Seld.], 525 ; overruling 15 *Barb.,* 139 ; *Kilpatrick* v. *Johnson,* 15 *N. Y.* [1 Smith], 322.

V. The item of $980, being the interest on the mortgage upon the Orange county farm, with which Mrs. Scott has credited herself, must be disallowed. The farm having been devised to her with the incumbrance upon it, she took it subject thereto and charged therewith. There is no express direction in the will that the mortgage should be paid other-

wise than out of the real estate. It was her duty to pay it off, or to pay the interest upon it if she suffered it to remain. (3 *Rev. Stat.*, 5 ed., 38, § 4; *Taylor* v. *Wendell*, 4 *Bradf.*, 324; *Home* v. *Fisher*, 2 *Barb. Ch.*, 559; *Halsey* v. *Read*, 9 *Paige*, 446; *Howe* v. *Howe*, 10 *Id.*, 159; *Johnson* v. *Corbett*, 11 *Id.*, 265.)

VI. The executrix must be charged with interest on the sum belonging to the estate, which she appropriated to her own use on the purchase of the house 156 West 34th-street.

VII. The item for the rent of the pew occupied by the widow after the testator's death, was not a charge upon the personal estate.

C. MINOR *and* D. R. JAQUES, *for Executrix.*

I. The gift of the residue is valid as a disposition of both real and personal estate, the suspension being for only the minority of one person; and neither a failure to dispose of the intermediate income, nor an illegal direction for its accumulation, whether express or implied, would render it void. (1.) There may be an implied as well as express direction for accumulation, but there must be something in the will to raise the implication; and the mere fact that a future interest is limited, and no disposition is made of the intermediate profits, will not authorize such implication. (3 *Rev. Stat.*, 5 ed., 13, § 40. (2.) The same rule is applied by the statute to personal property. (3 *Rev. Stat.*, 5 ed., 75, § 2; *Haxtun* v. *Corse*, 2 *Barb. Ch.*, 506; *Williams* v. *Williams*, 8 *N. Y.*, 538; *Kilpatrick* v. *Johnson*, 15 *Id.*, 322; *Phelps* v. *Pond*, 23 *Id.*, 82; *Gilman* v. *Reddington*, 24 *Id.*, 19; *Hull* v. *Hull*, 24 *Id.*, 650.

II. It is error, therefore, to assume that the "interest and profits" will "accumulate meanwhile;" they go, as they accrue, by virtue of the statute, to the children. (1.) Going to the children by virtue of the statute, they are not subject to any of the restrictions or limitations of the will, and it is competent for the children to make such use of them as they see fit. (2.) As to the item objected to, it is immaterial

whether the money was first received by the children and handed by them to their mother as a gift, or to be spent for their benefit; or whether they authorized her to apply it in the manner shown in the account.

III. There is no unlawful suspension of ownership in the direction, as to the fund of $40,000; which is a disposition of personal property exclusively, and is governed by those rules only which apply to personal property. (*Stewart* v. *McMartin*, 5 *Barb.*, 446; *Williams* v. *Conrad*, 30 *Id.*, 529; *Jennings* v. *Jennings*, 5 *Sandf.*, 177; *Powell on Devises, by Jarm.*, 56; *Norris* v. *Beyea*, 13 *N. Y.*, 273; *Sweet* v. *Chase*, 2 *Comst.*, 73; *Hunter* v. *Hunter*, 17 *Barb.*, 78.)

IV. If this provision is to be construed as continuing after the death of the widow, in case she dies before the infants are of age, it can only be reconciled with the subsequent positive direction—that it fall into the residue at her death, and be divided on Gilbert's majority—by considering the fund as then vested, but not in possession, and the gift as a pecuniary legacy, payable at a future time.

V. The investment having been made, and the interest applied as directed by the will, the amount of such interest credited in the account should be allowed. (*Bostwick* v. *Beizer*, 10 *Abbotts' Pr.*, 197; *Collumb* v. *Reid*, 24 *N. Y.*, 505.)

THE SURROGATE.—By his will, the testator, after certain specific devises and legacies, directed his executors, as soon after his decease as might be judicious, to sell stocks of any amount sufficient to realize the sum of fifty thousand dollars, which he afterwards, by a codicil, reduced to forty thousand dollars, and to invest this sum in mortgages upon real estate in their own names, in trust, to apply the income of it to the support and maintenance of his widow during her natural life, and to the maintenance and education of his two children, Louisa and Gilbert, until they became of age. He further declared, that if his widow should marry, that then she should have the income of thirty thousand dollars of the

amount so invested for her support and maintenance during her life; and that the income of the residue should, in that event, be devoted to the support and education of the two children, Louisa and Gilbert, until they should arrive at the age of twenty-one years, when it should become part of his residuary estate, to be divided and disposed of in the manner afterwards directed; and at the death of his wife, that the sum so invested and set apart for her to receive the income thereof, should become part of his residuary estate, and be divided among his heirs then surviving, as provided in respect to the residue of his estate, and that it should be so divided at the time afterwards named by him. Then, by a subsequent clause, he directed that upon his son Gilbert arriving at the age of twenty-one years—or, if he should die before that period, then in a reasonable time afterwards—that his executors should sell the whole of his real and personal estate (except the forty thousand dollars before invested and set apart), unless the same could be divided and partitioned off to the satisfaction of all concerned; and that the proceeds should be divided among his children, if living, or their survivors, if any should have died, share and share alike;—the share which any child would have been entitled to if living, to be divided among the heirs of such child, if he or she should have any, share and share alike. And to effectuate and carry out the above provision, he clothed his executors with full power to sell and dispose of all his real and personal estate at the time appointed, and to give all necessary deeds and instruments for conveying the property so sold, and carrying out the sale thereof.

The trust estate in the forty thousand dollars is void, as it suspends the power of alienation for a longer period than that of two lives in being at the time of the testator's death. (3 *Rev. Stat.*, 5 ed., 75, § 1.)

A limitation upon minorities is a limitation upon lives. (*Hawley* v. *James*, 16 *Wend.*, 61.)

There was here three lives in being at the time of the testator's death—his widow, and his two infant children, Louisa

and Gilbert; and if there is a possibility of the limitation extending over the lives of any two of them, it is void. (*Hawley* v. *James*, 16 *Wend.*, 61; *Vail* v. *Vail*, 7 *Barb.*, 236; *Taylor* v. *Gould*, 10 *Id.*, 391; 4 *Cruise*, 449; 4 *Kent*, 283.)

That possibility exists. If Louisa and Gilbert should die during their minority, the trust would continue until the death of the widow; and the absolute ownership of the property would, in that event, be suspended for a longer period than that of two lives in being at the time of the death of the testator; or, if one of the children named and the widow should die during the minority of the remaining child, the effect would be the same.

As either of these two events is possible, and may happen, the limitation is void.

It is suggested that there is not an absolute limitation during the minority of these two children, as, upon the death of the widow, the sum "invested and set apart, for her to receive the income thereof," is to become part of the testator's residuary estate, and that, consequently, if the widow should die during the minority of either Louisa or Gilbert, the trust would cease, and the limitation be put an end to.

This point has been simply taken without argument, and without the submission of authorities, and in the very short time that remains within which I am to administer the duties of this office, now limited to two days, it is not in my power, in the necessary attention which I must give to many other matters, to do more than to pass upon it as my present judgment dictates.

I do not think that the terms of the will would justify the construction that the trust was to cease if the widow died during the minority of these children.

It is expressly declared that the income of this fund is to be applied to their maintenance and support until they become twenty-one years of age, and this explicit provision would not, in my judgment, be affected either by the death of the widow before that period, or by the death of Gilbert during his minority.

This fund is specially excepted from the general division which is to take place, should Gilbert die during minority; and should that event take place during the minority of Louisa, the trust would, I think, continue for her maintenance and education until she reached the age of twenty-one. The direction that "the sum set apart, for the widow to receive the income thereof," should, upon her death, become part of the residuary estate, and be distributed at the time when the general division of the estate was to be made, is, as I read the will, a direction given in view of the possible contingency of the marriage of the widow, and had reference only to the sum to be set apart for her upon the happening of such an event. It follows immediately after the clause which declares that in the event of her marriage she shall have the income of thirty thousand dollars only, during her life; and the language would denote that he refers to that sum, as he speaks of it as " the sum invested and set apart, for her to receive the income thereof:"—unless in such a contingency as her marriage, no sum can, in strictness, be said to be specially set apart for her, for the forty thousand dollars was to be invested for the joint benefit of herself and the two children during their minority. It is not declared what proportion of the income of it she is to have, or what proportion was to be applied to the maintenance and education of the children during their minority. That would seem to have been left to the discretion of the executors. In the event of her marriage, however, a specific sum is set apart for her, the income of which she is to receive during life; and another specific sum, the residue of the fund, is set apart for the maintenance and education of the children. I think, therefore, that the contingency which the testator contemplated, and for which he meant to make provision, was the possibility of the marriage of his widow, and of her death before the happening of the event upon which the general division of his estate was to take place, and that he meant only to refer to the sum which would, should she marry, be set apart for her. In creating this trust he certainly in-

tended that the income of the forty thousand dollars should be a provision for the support of his widow during life, and for the education and maintenance of the two children during minority ; and though, if the widow should die before they reached the age of twenty-one, the whole income would be more than sufficient for the maintenance and education of these children, still it does not follow from that, that the trust would cease. The executors could act on their own discretion, or take the direction of the court as to how much should be applied for that purpose, and the residue would accumulate. (*Gott* v. *Cook*, 7 *Paige*, 521 ; *Lang* v. *Ropke*, 5 *Sandf.*, 363.)

In *Clive* v. *Walker* (1 *Bro. C. C.*, 146), where the testator gave one of his sons maintenance out of a trust created upon his real estate, and also gave him maintenance out of a trust created upon his personal estate, the court held that he was entitled to two allowances for maintenance, and referred it to the master to ascertain what allowance was necessary for his support, and directed that the rest should accumulate for his benefit.

But I regard the question, whether the trust would or would not terminate by the death of the widow before the children attained their majority, as wholly immaterial upon the question of its validity. The test, in my judgment, is not whether any further limitation would be cut off by her death before that period, but whether there is a possibility that the trust might, by circumstances that may happen, be carried over beyond the period of two lives in being at the time of the death of the testator. I have pointed out that that is possible, and that, in my opinion, is sufficient to show that it is void.

The authority given to the executors to sell the real and personal property except the trust fund, did not, as respects the real property, vest in them any estate. It was simply a power, and the land passed at once to the devisees, subject only to the execution of the power if the whole estate could not be divided and partitioned off to the satisfaction of all

concerned (3 *Rev. Stat.*, 5 ed., 20, 21, §§ 75, 77 ; *Germond* v. *Jones*, 2 *Hill*, 573 ; *Hall* v. *McLaughlin*, 2 *Bradf.*, 107), at the time appointed for the general division of it. The income and profits that might arise from it before it could be so divided or sold belonged to the heirs, and would not necessarily accumulate ; but it is otherwise as respects the personal property. The title to that was vested in the executors, and as the testator had made no disposition of the income and profits that would arise from it before distribution could be made, the necessary effect would be that there would, in the mean while, be an accumulation of the income and profits, and not for any of the purposes allowed by statute. (3 *Rev. Stat.*, 5 ed., 75, § 13 ; 4.) Though the will does not in terms direct the accumulation, the direction given leads to that result, and consequently the appointment of a further and distant time for the division of the personal estate, to which such accumulation was a necessary incident, was void. (*Converse* v. *Kellogg*, 7 *Barb.*, 597 ; *Hawley* v. *James*, 5 *Paige*, 318 ; *Vail* v. *Vail*, 4 *Id.*, 417.)

There are certain items in the executrix's account which I cannot pass. All the heirs agreed, in writing, that the mortgage of five thousand dollars on the farm in Orange county, devised by the testator to his wife, should be paid out of and be a charge upon the personal estate, the same as debts of the testator not secured by mortgage upon real estate ; that it should be paid out of the assets without any charge or claim upon the widow, and accordingly the executrix has paid off the interest upon the incumbrance.

Some of the heirs, however, who signed this instrument, are infants, upon whom it is not binding. When they become of age they may, and probably will, ratify the act ; but so far as the right to pay this mortgage depends upon this agreement, I cannot allow such payment as a charge against the personal estate. The land is the proper fund for the discharge of the mortgage. She took the land charged with the incumbrance. It was her duty to pay it off, or to pay the interest upon it, if she allowed the mortgage to remain, no

express direction being contained in the will that the mortgage was to be paid, otherwise than out of the real estate. (3 *Rev. Stat.*, 5 ed., 38, § 4; *Ram. on Assets*, ch. 29, § 1, and the cases there cited; 2 *Wms. on Ex.*, 144; *Taylor* v. *Wendell*, 4 *Bradf.*, 324; *Home* v. *Fisher*, 2 *Barb. Ch.*, 559.)

The bond for $6,000, paid by the executrix to the corporation of Trinity Church, is in a different position. It was a debt due by the testator, for the payment of which he gave his bond. It was a charge, therefore, upon the personal estate, and not upon the realty, and the executors were bound to pay it out of the assets in their hands. This item will, therefore, be allowed.

The executrix should be charged with interest on the moneys of the estate which were appropriated by her in the purchase of the house and lot 156 West 34th-street. Three instruments were signed by the heirs, dated on the first of May, 1859, reciting that in consideration of their natural love and affection for the executrix, their mother, and in the further nominal consideration of the sum of one dollar, they agree that she shall have, use, occupy, and enjoy, during her pleasure, the sums of $3,750, $5,000, and $6,000, making in all the sum of $14,750, that sum having been appropriated by the executrix for the purchase of the premises purchased by her, No. 159 West 34th-street; but to these agreements the same objection exists, that they are not binding upon the infants, and they must, therefore, be held to be of no validity.

The small item for the rent of a pew in the church in Broome-street, rented by the widow for the use of herself and the children, after the testator's death, is not a charge upon the personal estate, and cannot be allowed.

The item $100, paid to Mr. Bradford, is proved to have been paid for legal services rendered in the collection of rent. The two payments, to Mr. Smith, of $350, were stated by him, upon the hearing, to have been paid to him for legal services rendered to the estate,—Mr. Smith's examination,

under oath, having been waived by the opposing counsel. I shall, therefore, allow all these items for legal services.

The two safes were shown to have been purchased for the use of the estate; and, also, that they were necessary for the safe keeping of the mercantile books and voluminous papers left by the testator.

This, I think, embraces all the items that have been objected to. A decree will be entered accordingly.