## MARVIN v. MARVIN.

### December, 1868.

On an appeal from the decision of a surrogate granting or denying probate to a will, the supreme court acts not as a court of equity, but in place of the circuit judge under the former practice; and if they reverse on a question of fact, and award an issue for trial by jury, their order is not reviewable by the court of appeals.

Marvin *v.* Marvin.

*It seems,* that a motion for a new trial of such issues must be made at general, not at special term.

On an appeal to this court from the judgment of the supreme court on the verdict rendered on the trial of such issues, this court cannot reverse, unless there were such errors in law committed on the trial, or the verdict was so clearly against evidence, or without evidence, that it would have been the duty of the supreme court to set it aside, had it been a verdict in an action at law.

Undue influence in the making of a will may be inferred from circumstances.

A testatrix, eighty-one years of age, but of sound disposing mind, having two sons, by one of whom she had five grandchildren, after going to reside with the other son, revoked a previous will by which she had divided her estate equally between her sons, and executed a new will drawn by the one with whom she was living, and giving her estate to him, to the exclusion of her other son and all her grandchildren.

*Held,* that on the question of undue influence in such a case as this, it was proper to inquire into the reasons for such a disposition of the property, the probability that it was stimulated by the suggestions of those attending her, and the fact that they refused to allow the disinherited son to have private interviews with the testatrix was pertinent ; and that under all the circumstances a verdict annulling the will for undue influence must be sustained.

Le Grand Marvin, a son of Sarah L. Marvin, deceased, propounded his mother's will for probate in the surrogate's court of Erie county. George L. Marvin, the only other child, and heir of the deceased, opposed the probate. The testatrix was a woman of over eighty-one years of age. The will in question was drawn by Le Grand, and gave substantially all her personal property to Le Grand, and disinherited George.

There had been a dissension between the brothers, and the probate was opposed chiefly on the ground of undue influence. The surrogate held that the will was valid, and the testatrix was competent and free from restraint ; and accordingly admitted it to probate. The opponent appealed to the supreme court, who were of opinion that the evidence did not show that Mrs. Marvin understood the provisions of the will, and there was reason to suspect undue influence. They accordingly reversed the decree of the surrogate, on the questions of fact, and awarded issues pursuant to the statute, to determine, by a jury trial, the questions of the due execution of the will, and the competency and freedom of the testatrix.

Upon the trial before the jury much evidence was taken, the substance of which appears in the opinion. The jury found that the testatrix was under restraint at the time of executing the will.

The proponent moved, at special term, for a new trial on the ground of surprise, false testimony, newly discovered evidence, errors of the court in remarks and instructions to the jury, and that the verdict was against evidence, and the case not fu'ly considered or fairly tried. The court denied the motion; and at general term, on appeal, affirmed the order, and gave judgment annulling the will.

The proponent then appealed to this court, from the final judgment, and also from the order denying the motion for a new trial, and from the first order of the general term reversing the decree of probate and awarding the issues for trial by jury.

*John Ganson,* for appellant.

*Sherman S. Rogers,* for respondent;—Cited Darley *v.* Darley, 3 *Bradf.* 481, 507; 1 *Redf. on W.* 509, 514; *Dayt.* 117.

BY THE COURT.—WOODRUFF, J.—The argument of this appeal has taken a very wide range, and has, I think, proceeded to some extent upon a misapprehension on the part of the appellant. His notice of appeal, as well as his argument here, seeks to bring under review the decision of the supreme court, by which the decree of the surrogate was reversed and an issue was awarded; and the opinions delivered when that order was made, have been the subject of extended review. It is clear, that we have no jurisdiction to review that decision, and, therefore, were it to our minds clear, that, upon the evidence presented to the surrogate, we should have concurred with him in his conclusions of fact, we could not reverse a decision of the supreme court based upon a different estimate of the credibility, force and effect of the evidence.

Had that reversal been based upon a question of law, and been final in its effect upon the question of probate, it would have been the subject of review by this court. But it determined nothing finally respecting the application to the surro-

gate for probate, or the questions of law or fact involved therein. It simply determined that, upon the evidence, the supreme court had reached a different conclusion of fact from the surrogate, and, upon this difference, the statute peremptorily requires that the questions of fact arising upon the application for probate shall be submitted to a jury. There is no discretion, and the order is not subject to review. Prior to 1847, the appeal from the surrogate in such a case was to the circuit judge, and the legislature deemed it wise to direct, in effect, that if the circuit judge, upon the evidence, differed from the surrogate on the questions of fact, those questions of fact should be tried by a jury. 2 *R. S.* 66, § 57. The act of 1847 (see 1 *L.* 1847, p. 324, c. 280, § 17), by which the jurisdiction to hear such an appeal was transferred from circuit judges to the supreme court, did not change the character of the order to be there made, or its effect.

By the provisions of the statute ( 2 *R. S.* 66, § 37), "If it appear to the circuit judge that the decision of the surrogate was erroneous, he may, by order, reverse such decision ; and if such reversal be founded upon a question of fact, shall direct a feigned issue to be made up, to try the questions arising upon the application to prove such will." This order was the necessary result of a difference of opinion between the circuit judge and the surrogate upon the questions of fact in controversy, and is not subject to review in any tribunal.

The provisions of the statute regulating appeals from surrogates' courts (2 *R. S.* 608, *et seq.*), are equally peremptory (§ 98) : " If the circuit judge shall reverse the decision of the surrogate, upon a question of fact, an issue *shall* be made up, tried, and determined, as prescribed" in the title of the statutes above referred to. And no provision is made for a review in such case ; and, obviously, because nothing is finally determined thereby, but only that a trial of the question shall be had by a jury.

And that no review was intended is quite apparent, when it is observed that, by section 100 immediately following, to wit: " an appeal to the court of chancery may be entered from the decision of any circuit judge, upon such appeal from a surrogate, when no feigned issue shall have been awarded for the

trial of any question of fact within," &c., which imports by implication, that the order reversing upon questions of fact, and awarding such issue, is not the subject of appeal. Where the decision of the surrogate was reversed upon a question of law, and where it was affirmed, the order of the circuit judge might be reviewed on appeal, and the final decision of the court of chancery might be reviewed in the court for the correction of errors.

We have, therefore, on this appeal, no jurisdiction to inquire whether, upon the evidence taken at the hearing before the surrogate, his conclusions of fact were, or were not, according to our estimate of the just weight or preponderance of the evidence, or whether the inferences of the supreme court better accord with the conclusions we should form, if that evidence were properly before us. That evidence, we think, is not properly before us for consideration. When, upon that evidence, the two tribunals differed, the statute prescribed a new inquiry before a jury. That, and that only, so far as the controverted questions of fact are concerned, is the sole basis of all subsequent adjudication touching the propriety of admitting the will to probate.

The Code of Procedure has made no change in the rule on this subject. First, such a determination and sending the case to trial on the issue, is not a final determination of the questions involved; and, second, the authority to review, on appeal from the ultimate and final judgment, any intermediate order involving the merits and necessarily affecting the judgment, does not include the order in question. As already observed, the order in question determines nothing, except that the questions of fact shall be tried by a jury.

An example may be supposed, for illustration, which will show that this is clear. Suppose the evidence taken before the surrogate is conflicting upon the question, whether an alleged testator signed the will or it be a forgery; but the preponderance seems to the surrogate to be in favor of the genuineness of the subscription, and he so decides; on the the appeal to the supreme court, the opposite conclusion seems, to that tribunal, best supported by the evidence, and the decree of the surrogate is, on that ground, reversed, and an issue to try the

Marvin v. Marvin.

question is made and sent to the circuit. Upon the trial there, the contestants establish the forgery by the most convincing testimony, and the jury so find, and a final judgment disallowing the will and annulling the previous probate follows. It could not be for a moment insisted, that, on appeal from the final judgment, it was open to the appellant to argue the first appeal, or that this court had any jurisdiction to inquire whether, upon the evidence before the surrogate, he was justified in admitting the will to probate, and, on such inquiry, reverse the subsequent proceedings, and so establish an instrument as a will which was found on the trial, and upon full and convincing evidence, to be a forgery. See Talbot v. Talbot, 23 N. Y. 17.

The inquiry before us, therefore, appertains solely to the proceedings which followed the order for the trial of the issue and the judgment of the supreme court pronounced upon the verdict of the jury. For, in this case, no question of law has been decided adversely to the appellant, except the principal question arising upon the verdict of the jury, wherein they find that decedent was under restraint when she executed the instrument which is offered for probate as her will. It has not been insisted that any ruling of the judge at the trial of the issues, in receiving or rejecting testimony, was erroneous.

Again, it is not, as we understand, claimed—certainly it cannot be successfully claimed, that if the verdict of the jury finding that the instrument was executed under restraint, is to stand, the judgment is erroneous.

The case of the appellant, therefore, can, at most, present two questions: Is there ground for reversal in the refusal of the court below to grant a new trial of the issues? or, second, was the final judgment which the supreme court pronounced, upon the coming in of the verdict, erroneous?

I greatly doubt the regularity of the motion which was made by the appellant for a new trial at the special term of the supreme court, and the power of a single judge sitting at special term to grant such new trial, if he had deemed the case a proper one for such an order. The appeal from the surrogate was, according to the settled practice in such cases, brought to a hearing in the general term, and it is at least doubtful whether

there is any jurisdiction of such appeals in the court at special term.  Watts v. Aikin, 4 *How. Pr.* 439, 440; Wever v. Marvin, 14 *Barb.* 376, 377.  The court in general term ordered the issue, and, in my judgment, the question whether or not a new ·trial of that issue should be granted, belonged to the general term, and not to a single judge at special term.  It is true, that the statute gave to the supreme court, and not to the circuit judge by whom the appeal was heard, the power to grant a new trial.  That power was exercised in general term under our former system, in force when the statute was enacted, and it is far from clear that any other practice is now permissible.

But, be this as it may, I am of opinion, that, so far forth as the application for a new trial was based, not upon alleged errors in law, but upon considerations addressed to the discretion of the court or its favor, their decision thereon cannot be reviewed here.  If no rule of law or principle of equity has been violated to the prejudice of the appellant, I find no warrant for involving the appellate jurisdiction of this court for a review of a motion for a new trial upon newly discovered evidence, or surprise, or still less, upon the ground that the appellant, by cumulative evidence, could show that testimony given on the trial was untrue.  Indeed, we do not understand that the appellant insists otherwise, in this court.  And he has not called our attention to any errors committed by the judge before whom, at the circuit, the issues were tried, nor to any warrant for the suggestion that the case was not fully considered ·nor fairly tried, except so far as that may be included in his more general claim, that the verdict is a wrong verdict; that the court below ought so to have regarded it, and that this court ought now, on appeal, to reverse the judgment of the supreme court which was based thereon, because such verdict was not warranted.

We are, therefore, brought to the narrow questions whether this court can reverse this judgment, on the ground that the verdict of the jury on the trial of the issue directed by the statute, was not warranted by the evidence.  And if we have any jurisdiction to do so in any case, then, whether this case is

so manifestly erroneous, that, within the settled rules governing the exercise of such a power, we may do so here.

To give the proper answer to these questions, a further reference to the statute is necessary.

By section 58 of title 1, of chapter 6, part 2 (2 *R. S.* 67), it is declared "that such issues shall be made up and tried in the same manner as issues awarded by the court of chancery; but a new trial of such issue may be granted by the supreme court in the same manner as if it had been formed in a suit originally commenced in such court." By section 59, "the final determination of such issue shall be conclusive as to the facts therein controverted in respect to wills of personal estate only, upon the parties to the proceedings;" and, by section 60, "if such determination be against the validity of such will, &c., . . . . the surrogate shall annul and revoke the record or probate thereof, if any shall have been made."

These provisions leave no room for doubt of the effect of the verdict in this case, so long as it remains operative. In my judgment it must, by the necessary interpretation of the statute, stand, unless there were such errors in law committed on the trial, or it was so clearly against evidence that it was the duty of the supreme court, sitting as a court of law, to have it set aside; for, be it remembered, that the supreme court, as there spoken of, was a court of law only, and the "suit originally commenced in such court," referred to in the statute, must have been an action at law.

The proceeding is a statute proceeding, and although the supreme court acted, in the matter of hearing the original appeal, in the place of the circuit judge, their jurisdiction is, by the statute, a jurisdiction at law, and not in equity.

A doubt has been expressed whether, since the powers of the court of chancery have been conferred upon the supreme court, the jurisdiction which was here exercised under the statute has not been made as broad as if the matter had been before the court by bill in equity, and the issue had been awarded as in other equity cases.

I think the nature of this appeal, and the proceedings under it, have in no wise been changed by an enlargement of the jurisdiction of the court. The statute still furnishes the guide

to the proceeding, and its meaning is not affected by the circumstance that for other purposes an enlarged jurisdiction has been conferred upon the court. See Tyler *v.* Gardiner, 35 *N. Y.* 559, 596.

Upon what ground, then, can this court say, that the judgment is erroneous which was based upon the verdict finding that this will was executed under restraint?

Upon such a verdict there could be no other judgment.

Upon what ground can this court say that the verdict ought to have been set aside?

Our attention has not been called to any admission or rejection of evidence, in violation of any rule of law or equity, on the trial of that issue.

It is a decision of an issue which the legislature deemed it peculiarly proper to submit to a jury, where a difference arose between two judicial officers respecting the facts under examination.

Unless it is so clearly against evidence, or without evidence to support it, that it would have been the duty of the court, as matter of law, to instruct the jury to find the contrary, I do not perceive that this court can interfere with the judgment which necessarily followed, if the verdict was a true verdict.

The evidence of restraint appears to me slight, and were I sitting as a juror, and called upon to pronounce upon the evidence after perusing it in the printed case, I greatly doubt that I could say that the will of the decedent was executed under restraint, or was proved to be executed by her by undue influence.

But we cannot say that there was no evidence tending to that conclusion, nor can we lose sight of the fact, that there was conflict and contradiction in the testimony, and that the jurors having the witnesses before them, are presumptively better able to judge what weight should be given to their testimony than those who merely read the language in which such testimony is given.

The appellant is clearly right in his claim, that when the competency of the decedent to make a will is established, as it was in this case, and found by the jury, the burden of showing

Marvin v. Marvin.

that the will was obtained by undue influence, is upon the party who makes the allegation.

But his claim, that the finding of the jury that the decedent had capacity to make a will is inconsistent with a finding that it was executed under restraint, the restraint in question being such as results from undue influence, confounds two things entirely distinct as grounds for impeaching the execution of an instrument. The latter proceeds upon the assumption that testamentary capacity exists, but that it is not supposed to be freely exercised. The former invalidates the execution, though no influence or restraint is superadded. The decision of the supreme court directing probate of the will of Mrs. Gardiner was reversed, on the ground that it was procured by undue influence, although her testamentary capacity is declared undoubted. Tyler v. Gardiner, 35 N. Y. 559, 580.

A review of all the evidence given on the trial will not be necessary, nor, in the view which I feel compelled to take of our proper duty in reviewing the judgment, would it be profitable; for, as already suggested, although we might conclude that sitting as jurors we should not have found the same verdict, that is not sufficient to warrant a reversal. Where one tribunal has found the will duly executed, another has differed in its conclusion, the mandate of the statute in such cases having submitted the question to a jury for determination, and a verdict having been rendered, it would be an extraordinary exercise of judicial authority, if we were to reverse the judgment which such verdict rendered necessary, on the mere ground that we, as jurors, would have rendered a different verdict upon the evidence. No case has been cited to us, and we have found none, in which the verdict of the jury, rendered under the statute in question, has been disregarded, or held otherwise than conclusive, if there was no error committed on the trial, and upon the whole case the verdict appeared the conclusion of a fair and impartial jury.

It is claimed that the verdict is not controlling, and that, like an ordinary feigned issue out of chancery, its office and purpose is to assist the conscience of the court, which may, nevertheless, on the coming in of the verdict, look into the evidence, and if not satisfied with the finding, may order a new

trial, or may disregard the verdict and proceed to a determination of the case, according to the judgment of the court itself upon all the proofs.

I apprehend that this is an erroneous view of the effect of the verdict in this proceeding, and that the statute forbids our so regarding the verdict.

True, the opinions delivered in this court in Schenck v. Dart, 22 *N. Y.* 420, 422, and Clapp v. Fullerton, 34 *Id.* 190, describe the jurisdiction of the supreme court on appeals from surrogates, as a jurisdiction in equity, and the hearing as in the nature of a rehearing in equity. That is, no doubt, true of those appeals which come to that court as a jurisdiction supplanting that of the court of chancery; but neither those cases, nor in my judgment any sound interpretation of the statute, would warrant the supreme court, in a proceeding like the present, in disregarding the verdict and proceeding to a decree in conflict therewith, nor can we, as an appellate court, do so when the court below had no such power.

Unless, then, we can say, that the circumstances of this case made it the duty of the supreme court to order a new trial, we have no alternative but to affirm the judgment.

The decedent, at the time of the execution of the instrument in question, was upward of eighty years of age. She had two children, both past middle life, one (the contestant) having a family of five children, the other, the appellant, being childless. By the instrument in question she wholly disinherits the former, and bestows her very considerable estate upon the latter, the small legacies given to others being so subject to his interest and control as to be hardly deemed exceptions.

Now, it is quite true that a person is, under our law, at full liberty to dispose of his estate to such persons as he sees fit; living or dying, he is not prohibited indulging, in this regard, his passions, his prejudices or his caprices, and his will is not to be thwarted or disregarded by the judgment of any tribunal, whether of law or equity, because his dispositions are by them deemed unreasonable or prompted by passion, prejudice or other unworthy motive. But the extraordinary act of a mother in disinheriting a child with whom she had been upon terms of kind and affectionate intercourse and matured confidence for

fifty years, and until the circumstances arose which brought her into exclusive, intimate and constant intercouse with the favored brother, and into circumstances furnishing the opportunity to exert the influence which is alleged to have produced the will in question, is so marked, so at variance with the ordinary conduct of a parent, so hostile to the impulses of the maternal heart, as of itself to suggest the inquiry, what produced such a result? On the trial of the issue in this cause, the nature of the dispositions made may be considered by the jury in aid of the inquiry, was the will the free expression of the mind of the decedent?.

Again: the testimony given on behalf of the appellant to explain or account for such a disposition of the estate of the decedent, shows that the act of disinheriting was attended with manifestations of bitterness, indicating an entire alienation from all feeling of maternal regard, and, according to his own account thereof, this was in some manner produced during the last two years of her life, and while she resided with him, and with a person who was, whether with or without cause, manifestly unfriendly to the contestant.

It was certainly competent for the jury to consider this fact, and inquire, whether, according to the ordinary history of maternal life, it was probable, that a mother, after half a century of affectionate intercourse with her son, would go to her grave, and make her earthly preparation therefor, in the indulgence of such feelings towards him, if they were not stimulated by the persistent suggestions of those by whom she was constantly attended.

Again: there was evidence, that, at about the time of the execution of the will in her last illness, there was a reluctance to permit the contestant, her son, to have any private interview with his mother. This evidence, though not very full, because it does not appear that such an interview was sought on more than two occasions, was pertinent, and would probably bear upon the question in issue. There was some evidence, also, that intercourse with his children, her grandchildren, was prevented. The inference would not be unreasonable, that there was a purpose to prevent, if possible, the awaking of those feelings of tenderness usually strong and influential in the mind

of a grandparent, which might prevent so unrelenting and bitter an exclusion of them and their father from the inheritance.

There was evidence warranting a finding of both motive and opportunity to employ the influence which is alleged. The appellant is made almost sole beneficiary; the decedent resided with him during the last two years of her life, unattended by any person who had a regard for the relatives of the deceased, or who had a motive to guard her last days from the approach of such an influence; on the contrary, her chief attendant was a person who had been the cause of the contestant's declining to visit at that house. Whether her presence there did or did not justify the contestant in this, there is evidence that the result was ill will toward him, and some evidence of a threat looking to revenge.

There is evidence, that alleged cause of offense, or at least one such cause, was dwelt upon by the appellant and such attendant in the hearing of the decedent, and that so frequently, that the attending physician declares it, in language quite expressive of its reiteration in her ears, "the whole burden of their song." It was not unreasonable in the jury to infer, that if an influence tending to provoke the decedent into a condition of mind favorable to the accomplishment of a purpose to effect the disinherison of her son was plied "so frequently," that the attending physician "hardly remembered anything else" that they said, similar influences were probably at work when no person was present to hear. And the circumstance, that the fact itself was of slight importance, easily susceptible of an explanation quite consistent with due respect to his aged mother, and especially the fact that no complaint of it appears to have ever been made by her to the offending son, might naturally suggest that other influence than the promptings of natural affection, or the dictates of parental regard, were operating upon her mind.

Again: the will was drawn in his own favor by the appellant himself, a circumstance often characterized by the courts in England and this country, and by the recent cases in this State, as exposing the will to suspicion of being procured by his influence, or of those who were at work with him to promote the result.

To these, add the fact, that only two years before, and shortly before she went to reside with the appellant, she had made a will in which she divided her property, or the tranquil enjoyment of it, equally between her two sons. The jury may have thought, that no subsequent occurrence alleged by the appellant, was a sufficient or even probable reason for so sudden and violent a departure from a purpose which had matured during the childhood, youth and manhood of her children, and was so accordant with the usual and natural impulses governing such dispositions by a parent.

These circumstances taken together are so like many of the facts in the case of Tyler *v.* Gardiner, 35 *N. Y.* 559, and Delafield *v.* Parish, 25 *Id.* 9, 88, that the opinions in those cases and the authorities there cited might be largely quoted from in support of the finding of the jury here; but it is not on the ground that this court, notwithstanding the countervailing testimony, would have rendered such a verdict, that I place my conclusion that we cannot reverse the judgment, but that the verdict is not so against evidence or without evidence that we can say it was erroneous to proceed thereupon and pronounce judgment.

The appellant gave evidence in explanation of the proofs above adverted to, and, in some particulars, in contradiction thereof. It is impossible to say, that the conduct of the contestant was not liable to animadversion, and well suited to awaken the displeasure of his mother, as well as furnish the opportunity to the appellant and the attending nurse to stimulate and increase that displeasure for the accomplishment of an unworthy purpose if they desired. The testimony given by the appellant himself contains a full explanation of the manner in which the will was prepared, and furnishes an entire exoneration of himself from the imputation of having promoted the dishonor of his brother. He also suggests a reason why, in his judgment at least, it was not unreasonable that his mother should give to him the principal share, at least, of her estate, viz: that at a time when his own pecuniary embarrassments made it necessary or expedient that his real estate should be brought to a forced sale, his mother became the purchaser at a very small cost, and that the property so purchased constituted

the chief part of what she had to dispose of by will. I do not understand him as wishing to be understood that the title was acquired by her by a device or scheme by which she was to obtain the legal title for a sum much less than the actual value, and hold it upon a secret trust for his benefit; and if in truth the purchase by her was in good faith for the then value of the property, there would seem no very clear reason why he, more than his brother, should receive the profits resulting from its increase in value. But this explanation was a proper one for the consideration of the jury. It is, however, prudent to observe that no such idea appears to have been present to the mind of the deceased or of the appellant himself, when the will of 1861 was drawn and executed.

Other explanations were given, and testimony tending to show, that the purpose to exclude the contestant was formed some months before the will was made; and if upon all this proof the jury had concluded that the deceased, in making the will, acted under the influence of real or supposed provocation, in the indulgence of passion, or under the influence of a perverted and groundless idea that the fifth commandment required her to punish the misconduct of her son by excluding him from any portion of her estate (which the testimony shows was not unfrequently suggested in the family), but that she nevertheless acted freely and in the expression of her own deliberate purpose, without fraud or undue influence from others, the verdict would not have been liable to impeachment for want of evidence to sustain it; and, however unreasonable or even unjust the will may be, it would stand as her will, and be operative because it was her will.

The case was one in which intelligent minds, free from prejudice or partialty, seeking only after the truth, might reasonably differ in their conclusions upon the fact in question. In such case the verdict must be held conclusive.

The judgment appealed from must therefore be affirmed.

All the judges concurred, except HUNT, J., who dissented, on the ground that there was no sufficient proof of undue influence, and GROVER, J., who expressed no opinion.

Judgment affirmed, with costs.