KINGS COUNTY.—HON. W. L. LIVINGSTON, SURROGATE.—August, 1882.

BURKE V. NOLAN.

*In the matter of the probate of a paper propounded as the last will and testament of* JAMES BURKE, *deceased.*

The proponent of an alleged will has the burden of proving, beyond a reasonable doubt, a compliance with the requirements of the statute, as to execution.

The recitals of an attestation clause do not outweigh the positive statements of a subscribing witness, in opposition thereto.

If a testator's communication, to subscribing witnesses, of the information that the instrument which they are called upon to sign is his will, or of his desire that they should sign as such, is made through the intervention of a third person, it must be made in the presence and hearing of both testator and the witnesses, so that the latter may know that the third person's act was that of testator.

Decedent, at the time of the alleged execution of his will, was ill and feeble, able to speak only in a low tone, confined to his bed in a small room, and within forty-eight hours of his death.   On the proceedings for probate, it appeared that K., the lawyer who drew the will, sat by the bedside, read the paper to decedent, asked him if he declared it to be his will, and if he wished "those gentlemen" to sign it, to which inquiries decedent indicated assent; that S., one of the subcribing witnesses, was standing in the doorway leading into the bedroom from a larger room; that the other witness, L., was standing in the middle of the latter room behind S.   The witness L. testified that he could see decedent; that he saw the latter's hand on the pen; but that he could not hear what K. was reading to decedent, nor what was said between them.   K. came out into the large room and asked the witnesses to sign as such, but there was

no evidence that decedent heard this request, or knew that S. and L. were there for the purpose of acting as witnesses.—

*Held*, that there was no sufficient evidence of a declaration by decedent, to the witnesses, of the character of the instrument, or of a request to L. to sign as a witness; and that, for lack thereof, probate must be refused.

APPLICATION, for the probate of a paper propounded as decedent's will, by Richard Nolan, named as executor therein; opposed by Catharine Burke, decedent's widow. The facts appear sufficiently in the opinion.

JOHNSON & LAMB, *for the will.*

TEUNIS G. BERGEN, *for contestant.*

THE SURROGATE.—The probate is opposed on the grounds that the testator was not in a proper condition of mind to make a will; that he was unduly influenced in the disposition of his property; and that the will was not legally executed.

There is no doubt that the testator possessed testamentary capacity, when he declared to Father Mulligan his intentions in regard to the disposition of his property. It is true that he was mistaken as to the exact amount of money he had in bank; but it is not necessary to attribute that mistake to a disordered mind, any more than the error of the witness, Fitzgerald, on the same subject. The testator was not a man of education, familiar with figures; and, independently of the failings of memory, it would not be very remarkable if he did make a mistake of a few hundred dollars in trying to get at the balance of his bank account.

On the day the will was executed, he was undoubtedly very ill and feeble, compelled to keep up his strength by

a free use of stimulants, and it seems that the condition of his mind varied; at times he would understand what was said to him, recognize people and be able to converse with them intelligently; at others, he would rave, talk incoherently and not be able to recognize his intimate friends.. When the will was executed, he seemed to understand what he was doing; there was no sign of delirium about him; he understood Mr. Kirkham when he asked what Miss Kelly's christian name was, and answered the question correctly; he bowed, in sign of recognition, when his attention was called to Mr. Smith's presence; and Mr. Kirkham and Mr. Smith both testify that he understood what was said to him, and what was going on around him, and that his mind was clear. Even on the following Saturday night, when he was much nearer to death, and when, according to the doctor's testimony, his mind was not in any better condition than on Friday evening, Mr. Fisher and Mr. Willard seemed to think that he was competent to make a will.

The legacy to Mr. Ryan excites just criticism. It appears, from the testimony, that he owed the testator the sum of $200, which he was in no great hurry to pay back. He was the one who had the most to do with the will. He selected the lawyer who drew it, gave him the necessary instructions to enable him to prepare it, selected the witnesses, and was present at its execution. So far as the evidence discloses, the testator never mentioned to Father Mulligan that he had any intention to make Ryan a legatee, although he repeatedly told him (Mulligan) how he wanted to dispose of his property. Under these circumstances, when, on reading the will, Ryan is found to be a legatee for the amount of his debt to the testator,

a presumption of undue influence is raised against him. (Marvin v. Marvin, *3 Hun, 139, note;* Marvin v. Marvin, *3 Abb. Ct. App. Dec., 192, 204;* Van Kleeck v. Phipps, *4 Redf., 99, 132;* 1 Redf. on Wills, *122, 515;* Stein v. Wilzinski, *4 Redf., 441, 449;* Vreeland v. McClelland, *1 Bradf., 393, 420;* Will of Anna Martin, *Ms. Op. in this court* [April 21st, 1882]). And this presumption is not rebutted by the fact that the testator, in his then weak and feeble condition, did not object to the legacy, when the will was read to him just previous to its execution. Why should he object in the presence of Ryan, if it was through his undue influence that he made him a legatee? (Tyler v. Gardiner, *35 N. Y., 550, 595*).

The requirements of the statute, in relation to the execution of wills, which it will be necessary to consider in this case, are substantially: that the will shall be subscribed by the testator; that such subscription shall be made by the testator in the presence of, or shall be acknowledged by him to have been so made to, each of at least two attesting witnesses; that the testator, at the time of making such subscription or acknowledgement, shall declare the instrument so subscribed to be his last will and testament; that each of the attesting witnesses shall sign his name at the request of the testator.

Another statute provides that at least two of the attesting witnesses, if they are within the State, must be produced and examined, to prove the validity of the execution of a will, before it can be admitted to probate (Code, §§ 2618, 2622, 2623).

It is clear, therefore, that the law contemplates that all the above requirements of the statute, in regard to the execution of wills, shall be complied with, in the

presence of the attesting witnesses, in such a manner that they may be able to testify on the subject, although their testimony is not always controlling (Stein v. Wilzinski, *4 Redf.*, *441*, *448;* Scribner v. Crane, *2 Paige*, *147;* Tarrant v. Ware, *25 N. Y.*, *425, note;* Trustees of Auburn Seminary v. Calhoun, *25 N. Y.*, *422;* Orser v. Orser, *24 N. Y.*, *51;* Matter of Kellum, *52 N. Y.*, *517;* Wilson v. Hetterick, *2 Bradf.*, *427*).

Hence it is necessary that the testator should in some manner communicate to the attesting witnesses, at the time of his subscription or acknowledgement, the information that the instrument which they are called upon to sign as witnesses is his will (Gilbert v. Knox, *52 N. Y.*, *125*, *128;* Lewis v. Lewis, *11 N. Y.*, *220*, *226;* Coffin v. Coffin, *23 N. Y.*, *1*, *15;* Seymour v. Van Wyck, *6 N. Y.*, *120*).

It is equally indispensable that the testator should communicate to the attesting witnesses his desire that they should sign the will as witnesses (Coffin v. Coffin, *23 N. Y.*, *1, 15;* Peck v. Cary, *27 N. Y.*, *1;* Gilbert v. Knox, *supra;* Matter of Kellum, *52 N. Y.*, *supra*).

And if either communication is made through the intervention of a third person, it must be so made in the presence and hearing of the testator and of the witnesses, so that the attesting witnesses may know, of their own knowledge, that what was said or done by the third person on behalf of the testator was assented to *by him* (Redf. L. & Pr. Surr. Cts., *2d ed.*, *166;* Coffin v. Coffin, Peck v. Cary, Gilbert v. Knox, *supra;* Thompson v. Stevens, *62 N. Y.*, *634;* Stein v. Wilzinski, *4 Redf.*, *441*, *448;* McDonough v. Loughlin, *20 Barb.*, *238*, *244*).

In the case at bar, the will was signed by the testator

affixing his mark thereto in the presence of the two attesting witnesses. The witness Smith says that he was standing in the doorway leading into the small room where the will was executed, and saw the testator sign the will. The witness Laffin says that he was standing in the middle of the large room, behind Smith; that he could see the testator; that he stood in front of the bedroom looking in. When asked if he saw the testator sign the will, he answered that he saw his hand on the pen. The will was signed *in his presence*, within the decisions (1 Jarman on Wills, *Randolph & Talcott's ed.*, *222, 224, 253*); 1 Redf. on Wills, *244, 252, 284;* Probate of will of Patrick Flaherty, *Ms. Op. in this court* [Sept. 27th, 1881]).

But there was neither a declaration to the witness Laffin of the nature of the instrument executed, nor a request to him to sign it as a witness. The testator was very ill and feeble, and did not speak to him at all; in fact, Laffin did not go near him, but remained all the time in the large room. Mr. Kirkham, the lawyer who drew the will and superintended its execution, sat by the bedside of the sick man, and read the will to him. Kirkham asked Burke if he declared it to be his will, and if he wanted "those gentlemen" to witness it. Burke made some motion, or said yes or something of the kind—he answered affirmatively. Kirkham, it seems, did not mention any names, and it does not appear that the testator knew whom he referred to. There is no evidence that the testator knew that Smith and Laffin were there for the purpose of witnessing his will. The testator was within forty-eight hours of his death, very weak and feeble, and was not at all in a

condition to observe or take notice of things not pressed upon his attention. Under such circumstances, it must appear that the questions which were asked were made very clear to him (Heath v. Cole, *15 Hun, 100*). But, independently of that, Laffin was too far from Kirkham and the testator to hear what Kirkham was reading to the testator, or what was said between them; and, as a matter of fact, he did not hear it. He so swears, and there is no reason to doubt the truth of his statement. As to him, therefore, there was no valid request to sign, and no valid declaration that the paper was a will (Burritt v. Silliman, *16 Barb., 198, 211*). It may well be that, if he was in such a position that he *could* and *ought* to have heard what was said, the remarks should be considered as having been made within his hearing, on the same principle that, if he was in a position to see the testator sign the will, it must be deemed to have been signed in his presence; but there is no such proof, and his positive statement that he could not hear what was being read and said to the testator is substantially uncontradicted, except by the attestation clause which does not appear to have been read to him, and which cannot be allowed to outweigh his positive statement—not his want of recollection—as to what occurred (Lewis v. Lewis, *11 N. Y., 220, 224;* Orser v. Orser, *supra;* Wilson v. Hetterick, *supra*). Smith says, that he was in the doorway leading from the large room to the bedroom, and that Laffin was behind him; he does not state how close to him. Kirkham says that he once observed the two witnesses standing in the door, nearly together, but that, when he commenced to read the will, his attention was concentrated on the will. No one testifies whether Kirkham's tone of

voice was such that Laffin must in all probability have heard him, where he stood in the next room, and it is certain, from the evidence, that Burke's answer must have been in a very low tone.

Laffin's admission to Mr. Kirkham, that he had heard the will read, is not inconsistent with his testimony that he knew that Mr. Kirkham was reading the will to the testator, but could not hear its contents or what was said between them. He might very well have heard Kirkham reading to the testator without being close enough to hear the words that were read. After Kirkham came out of the small bedroom, he asked the witnesses if they would witness the will, and sign the will as witnesses in the large room; but there is nothing to show that the testator did or could hear this request to the witnesses, and, in the condition in which he was, it is not at all likely that he did hear it. After the will was signed by the witnesses, it was handed to one of the executors, and there is no evidence that the testator saw it again.

Mr. Kirkham also signed the will; but apparently not with the intention of becoming an attesting witness to it, and he was not requested by the testator to become such a witness (*Ex parte* Le Roy, *3 Bradf.*, *227*).

The burden is on the proponents to show, beyond a reasonable doubt, that the will was executed according to the provisions of the statute (Tarrant v. Ware, *25 N. Y.*, *425*, *429*, *n*); and, upon the evidence, it cannot be said that there was a proper declaration to both witnesses that the instrument signed by the testator was his will, or that there was a sufficient request to both to sign it. It is even doubtful if there was a proper request at all to

either witness to sign the will. Probate must therefore he denied.

Decreed accordingly.